In re HONOLULU CONSOL. OIL CO.

(Circuit Court of Appeals, Ninth Circuit. July 5, 1917.)

No. 3003.

JUDGES ⊕⇒43—DISQUALIFICATION—INTEREST AS STOCKHOLDER.

Where the United States government, as part of a unitary scheme or plan of litigation, has brought various suits against various oil companies to recover possession of oil lands and judgments for the value of oil or mineral extracted therefrom, in which the question of damages was identical, a judge owning stock in one of such oil companies is disqualified to sit on the trial of such a suit against another of such oil companies, under Judicial Code (Act March 3, 1911, c. 231) § 20, 36 Stat. 1090 (Comp. St. 1916, § 987), providing that, whenever it appears that the judge of any District Court is in any way concerned in interest in any suit pending therein, it shall be his duty to enter the fact on the records and certify an authenticated copy thereof to the senior judge for the circuit.

Petition for Order to the District Court of the United States for the Northern Division of the Southern District of California.

Original petition by the Honolulu Consolidated Oil Company for a writ of mandamus, directed to Hon. Benjamin F. Bledsoe, Judge of the United States District Court for the Southern District of California, Northern Division, commanding him to enter an order that an authenticated copy of certain suggested disqualifications be certified to the senior Circuit Judge of the circuit. Writ granted.

---

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Morrison, Dunne & Brobeck, of San Francisco, Cal., George E. Whitaker, of Bakersfield, Cal., and W. N. Mills, of San Francisco, Cal., for petitioner.

E. J. Justice, Sp. Asst. Atty. Gen., and Albert Schoonover, U. S. Atty., of Los Angeles, Cal., for respondent.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

PER CURIAM. It is alleged in the petition, among other things, that the Honolulu Consolidated Oil Company is the defendant in 17 certain suits brought by the United States in the Southern district of California, Northern division of said district; that in the complaints in said suits it is alleged in substance that the United States is the owner and entitled to the possession of the lands described in the said complaints; that such lands are oil lands and gas lands; that the same were included within the executive withdrawal order of September 27, 1909; that, notwithstanding the premises and in violation of the alleged proprietary rights of the United States, the petitioner herein entered upon and took possession of such premises, subsequent to the said date of such withdrawal, for the purpose of exploiting the same for petroleum, oil, and gas, and did so exploit the same, and appropriate to its own use the oil and gas therein explored for, drilled, discovered, and extracted; that this petitioner was not, nor was any other person at the time of such withdrawal, the bona fide occupant or claimant of such premises, or in the diligent prosecution of work leading to the discovery of oil or gas thereon; that it was further alleged that after such withdrawal the petitioner extracted, produced, and converted to its own use from the premises in question large quantities of petroleum, oil, and gas, and is continuing to do so, and will so continue, to the alleged irreparable damage of the plaintiff, if not restrained from so doing. By way of relief it was prayed, among other things, that an accounting be had by defendants, and that each of them make complete and itemized disclosures of the minerals, particularly gas and petroleum, removed, extracted, or received by them from such lands, and of any and all moneys or value received from the sale or disposition of minerals therefrom, and any rents or profits received under any sale, lease, transfer, conveyance, or agreement concerning such lands, or any part thereof, and that the United States recover from the defendants all damages sustained by the United States in the premises, and for the appointment of a receiver. An answer was interposed in each suit, substantially joining issue upon the ownership, and also upon the right of possession by the United States in and upon the lands in question, or any gas, petroleum, or other minerals therein contained.

It is further alleged in the petition that after issue joined, and on the 26th day of May, 1917, before Hon. Benjamin F. Bledsoe, an application was made by the United States for an inspection of certain books and documents of the petitioner; that this was the first adversary proceeding in the cause; that the petitioner resisted said application, upon what it believed to be sufficient and meritorious grounds, and, conceiving it to be its duty, seasonably and without delay suggested the disqualification of Hon. Benjamin F. Bledsoe under section 20 of the

Judicial Code; that petitioner formally made such suggestion in writing and supported the same by affidavit. This was done in each of the said suits. The suggested disqualification was that where the sitting judge has a lawsuit, or is a stockholder of a corporation having a lawsuit, pending or impending with another person, or with the same person or plaintiff, which rests upon a like statement of facts or upon the same point of law as that pending before him, it is a sufficient ground of disqualification. Accordingly it was moved on behalf of the petitioner that this disqualification be entered in the records of the court, and that an authenticated copy thereof be forthwith certified to the senior Circuit Judge of this circuit, to the end that such proceedings should be had thereon as provided in section 14 of the Judicial Code (Comp. St. 1916, § 981). Thereupon the said sitting judge denied the application for his disqualification, to which petitioner then and there duly excepted.

Attached to the petition is the affidavit of William P. Roth, the secretary of the Honolulu Company and one of the defendants in the suit, alleging that in these suits the United States seeks to recover possession of the lands described in the complaints, and judgments for the gross value of all oil or other mineral extracted therefrom during the use or occupancy thereof by the defendants; that in each of said cases there are one or more corporations defendant whose stockholders are subject to the stockholders' liability under the laws of California; that these oil suits are all a part of a unitary scheme or plan of litigation brought and maintained by the United States against the various oil companies in the state of California; that an important question to be determined in each of such suits would be the rule of damage to be applied; and that, in so far as the decision of such question is concerned, each of said cases is practically identical. These allegations were not denied in the answers filed herein, and it will be assumed that they are true.

Hon. Benjamin F. Bledsoe answered, stating in substance that some years ago, for a cash consideration, the exact amount of which he could not remember, but which to the best of his recollection amounted to some $300, he purchased from a stockholder of the Consolidated Midway Oil Company a small block of stock; that he did not remember whether it was fully paid up or not; that thereafter, and some time prior to February 1, 1912, he was apprised of some plan for a reorganization of this corporation, and that all the property of this corporation had been transferred to the National Pacific Oil Company, and that pursuant to such arrangement, and upon surrender of respondent's shares of stock of the Consolidated Midway Oil Company, there would be issued to him his proportionate part of the stock of the said National Pacific Oil Company; that thereupon respondent surrendered his stock in said Consolidated Midway Oil Company, and received in lieu thereof 1,125 shares of the stock of the National Pacific Oil Cmpany; that some time early in 1915 respondent had presented before him some phase of the oil litigation in which the United States was plaintiff and the said National Pacific Oil Company was a defendant; that thereupon respondent, realizing his ownership and possession of the 1,125 shares

of stock of that company, suggested his own disqualification in the case in which the said National Pacific Oil Company was a party, and which was then pending before him, but that the said suggested disqualification was waived by the parties to that controversy; that while respondent was still the owner and in possession of such stock, and while he was holding a session of his court at Fresno in October, 1915, counsel for the defendant in United States v. Devil's Den Consolidated Oil Co., being the same counsel representing the petitioner in this proceeding, suggested the disqualification of respondent to hear that case because of his ownership of the stock in the National Pacific Oil Company, and respondent thereupon declined to hear said case; that, desiring to relieve himself, so far as he might do so, from any legal disqualification, in order that the matters of business coming before his court might not suffer through delay, and because of the disqualification of the judges with respect to the great mass of oil litigation pending and impending therein, he indorsed said 1,125 shares of stock in blank and delivered the same to a broker in Los Angeles, with the request that they should be sold in the market at such price as was then ruling; that thereafter respondent was advised that such stock had been sold, and respondent on November 3, 1915, received a check for the purchase price thereof amounting to $16.90; that thereafter, in July, 1916, upon application for some form of provisional relief in the same case which had come before respondent in Fresno in October, 1915, the disqualification of respondent because of his ownership of the stock herein referred to was again urged; that thereupon respondent, conceiving that he had been disqualified in the case when the disqualification was first urged because of his then ownership of such stock, and that as to such case such such disqualification could not be removed by a subsequent sale of such stock, declined thereafter to hear said case, but as to any case which arose after respondent had entirely parted with his stock he conceived that no legal disqualification attached to him because of his previous ownership of said stock.

With the filing of this answer on the part of the respondent, the United States filed a demurrer to the petition, which after a hearing was overruled. The case coming on for a hearing upon the petition and answer, the petitioner offered the testimony of Mr. A. L. Weil and Mr. Oscar Sutro, in which they stated the circumstances under which the alleged disqualification of Judge Bledsoe was brought to his attention in the first instance by the defendants, and his action with respect thereto. In an additional answer filed by Judge Bledsoe, relating to the testimony of Mr. A. L. Weil and Mr. Oscar Sutro, Judge Bledsoe states that in his original answer he referred to a prior hearing in Los Angeles on "some phase of the oil litigation," wherein he suggested his own disqualification, and the disqualification was waived by the parties to the action, and not to the hearing at Fresno referred to by Mr. Weil and Mr. Sutro. We are of opinion that this particular controversy concerning the time and circumstances relating to the suggested disqualification of the respondent and the waiver of disqualification is immaterial to any issue now before this court.

The question to be determined is whether Judge Bledsoe is in any

way "concerned in interest" in the pending suit by reason of a stock-holder's liability growing out of his ownership of 2,250 shares of stock of the Consolidated Midway Oil Company prior to February 1, 1912, and his ownership of 1,125 shares of stock of the National Pacific Oil Company, into which the former company was reorganized, and the ownership of the latter stock in lieu of the former from February 1, 1912, to November 3, 1915. Section 20 of the Judicial Code provides:

"Whenever it appears that the judge of any District Court is in any way *concerned in interest* in any suit pending therein, or has been of counsel or is a material witness for either party, or is so related to or connected with either party as to render it improper, in his opinion, for him to sit on the trial, it shall be his duty, on application by either party, to cause the fact to be entered on the records of the court; and also an order that an authenticated copy thereof shall be forthwith certified to the senior Circuit Judge for said circuit then present in the circuit; and thereupon such proceedings shall be had as are provided in section fourteen."

The case referred to by counsel on both sides as determining this question was mainly that of Meyer v. City of San Diego, 121 Cal. 102, 53 Pac. 434, 41 L. R. A. 762, 66 Am. St. Rep. 22. The rule stated in that case is that a judge is disqualified in any litigation where he has any certain, definable, pecuniary, or proprietary interest which will be directly affected by the judgment that may be rendered. The court, in support of this rule, referred to a number of cases, among others that of North Bloomfield G. M. Co. v. Keyser, 58 Cal. 315. In that case the respondent was the presiding judge in the superior court of Yuba county, Cal., and an owner of lots in Yuba City, in the county of Sutter, bordering upon the Feather river. The city of Marys-ville is situated on the north bank of the Yuba river, at its junction with the Feather river. In an action brought by the city of Marys-ville against the North Bloomfield Gravel Mining Company and others, it was alleged that the mining operations of the defendants on the headwaters of the Yuba river were filling up the Yuba river with mining sediment, slickens, and small stones, which, being carried down the channel, caused the waters of the river in the winter season to overflow its banks, and the sediment, slickens, sand, and small stones to be deposited on the lands of the city of Marysville bordering upon the Feather river. The defendants moved for a change of venue, upon the ground that the presiding judge was directly interested in the result of the action. The land owned by the judge was not in the city of Marysville, the complainant in the action, but in Yuba City, on the opposite side of the Feather river, and, while it was not involved in the action, it was equally affected by the mining operations complained of. The judge denied the motion for a change of venue, holding that, as he was not interested in the case, he was not disqualified from sitting in the cause, whereupon certain of the defendants applied to the Supreme Court for a writ of prohibition to prevent Judge Keyser from acting in the cause. The Supreme Court, speaking through Judge Ross, said:

"It is an ancient maxim, and one founded in the most obvious principles of natural right, that no man ought to be a judge in his own cause. That prin-

ciple finds expression in our statute in these words: 'No justice, judge, or justice of the peace shall sit or act in any action or proceeding: 1. To which he is a party, or in which he is interested.' * * * Section 170, Code Civ. Proc. This provision should not receive a technical or strict construction, but rather one that is broad and liberal. 'The court ought not to be astute to discover,' said the Supreme Court of Michigan, in Stockwell v. Township Board of White Lake, 22 Mich. 350, 'refined and subtle distinctions to save a case from the operation of the maxim, when the principle it embodies bespeaks the propriety of its application. The immediate rights of litigants are not the only objects of the rule. A sound public policy, which is interested in preserving every tribunal appointed by law from discredit, imperiously demands its observance.' Undoubtedly the prohibition does not extend to cases where the interest is simply in some question or questions of law involved in the controversy, or when it is indirect and remote; and if the interest of Judge Keyser in the suit pending before him extends no further than that, it is clear that he is not disqualified to determine the cause. But we cannot so regard his interest upon the facts as presented."

It was accordingly held that the judge had an interest in the outcome of the litigation, and that it was a direct, measurable, pecuniary interest, and that he was disqualified to sit in the case.

We are of opinion that, under the rule stated in these two cases, and in the cases cited by the court supporting the doctrine there declared to be the law, Judge Bledsoe is concerned in interest in the result of this suit by reason of his stockholder's liability in the companies mentioned. We are of opinion, furthermore, that inasmuch as the matter is submitted with expressed disavowal of any purpose other than to obtain a ruling upon the naked, legal question involved, the court need not be astute in making nice distinctions as to the meaning of the words "concerned in interest," but can best do full justice in the premises by holding that, under the showing made, the judge is sufficiently related to the litigation to impel the conclusion that he is concerned in interest, and therefore should not sit.

A writ of mandamus will accordingly issue directed to Hon. Benjamin F. Bledsoe, Judge of the United States District Court for the Southern District of California, requiring him to enter an order in the records of the court in these cases in accordance with this opinion, and that an authenticated copy thereof be forthwith certified to Hon. William B. Gilbert, the senior Circuit Judge of this circuit.