FRED BROWNLEE, GEORGE CLIVE GOURLEY AND PHIL RALPH FARRELL, *Plaintiffs in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion Filed April 24, 1928.

Petition for Rehearing Denied May 30, 1928.

*Theo. G. Risley* of Washington, D. C., *R. E. Hamrick* and *E. W. Davis*, Attorneys for Plaintiffs in Error;

*Fred H. Davis*, Attorney General, and *H. E. Carter*, Assistant, Attorneys for Defendant in Error.

BUFORD, J.—In this case the plaintiffs in error were indicted on a charge of murder in the first degree in St. Lucie County, being in the Twenty-first Judicial Circuit of Florida. They were charged with the murder of Perley Sylvester Thomas and were all charged as principals. The

judge of that Circuit advised the Governor that he was disqualified to try the case. The Governor assigned another circuit judge to proceed to St. Lucie County and dispose of such cases which it might appear that Judge Thomas, Judge of the Twenty-first Circuit, was disqualified in. Judge Thomas filed a certificate recusing himself, which certificate was as follows:

"It appearing that the Hon. John W. Martin, Governor of the State of Florida, has caused to be called a special term of the above court, and has designated the Hon. W. T. Harrison, Judge of the Eighteenth Judicial Circuit of Florida, to preside in any matters in which the Judge of this Court may be disqualified.

"And it appearing that the special term of court was called to convene on the 21st day of February, A. D. 1927, at ten o'clock A. M. and that thereupon a jury was summoned to appear on the 23rd day of February, 1927, from which a grand jury will be empaneled to investigate certain matters herein pending, and that one of the matters to be investigated by the said grand jury is the case of the State of Florida versus J. T. Lockhart *et al.*, charged with the murder of one P. S. Thomas.

"And it further appearing that the judge of this court is, by his relationship to the said P. S. Thomas, disqualified to act in the said matter, he being a second cousin of the said P. S. Thomas.

"The judge of this court does therefore certify his disqualification in said matter and decline to take any jurisdiction thereof.

"DONE AND ORDERED in Fort Pierce, Florida, February 23rd, 1927.

"ELWYN THOMAS,
Judge."

Judge Harrison proceeded with the arraignment and, after the defendants had pleaded "not guilty," allowed them to withdraw their plea of "not guilty" for the purpose of presenting a motion to quash the indictment, the order by the Governor assigning Judge Harrison to officiate having been recorded in the Circuit Court Minute Record on the 19th day of February, 1927, and the indictment having been returned on the 24th day of February, 1927, subsequent to the convening of the special term of the court on the 23rd day of February, 1927.

Motion to quash the indictment was as follows:

"1. That the grand jury returning said indictment was drawn by some person other than the judge of this court, on the 21st day of February, A. D. 1927.

"2. Because at the time of the drawing of the said grand jury the judge of this court had not certified his disqualification as judge thereof.

"3. Because at the time of drawing thirty-six men from the jury box to serve the petit and grand juries at the special term of court, the Honorable Elwyn Thomas was still judge of said court and had not yet certified his disqualification and the said Honorable W. T. Harrison was without jurisdiction to hold the said term or to draw a venire from the box.

"4. Because the defendants are indicted in only one court, and said indictment fails to charge an offense against the defendants, George Clive Gourley, Will Augustin Lee, Phil Ralph Ferrell, Archibald Brownlee and Fred Brownlee.

"5. Indictment alleges an assault made by all of the defendants on Perley Sylvester Thomas, but fails to allege the manner, means or instrument by which such alleged assault was made by the defendants George Clive Gour-

ley, Will Augustin Lee, Phil Ralph Ferrell, Archibald Brownlee and Fred Brownlee or any of them.

"6. The indictment fails to charge the defendants George Clive Gourley, Will Augustin Lee, Phil Ralph Ferrel, Archibald Brownlee and Fred Brownlee or any of them with any specific act, by the use of a deadly weapon or otherwise resulting in the death of Perley Sylvester Thomas.

"7. Because the indictment is signed by Angus Sumner, States Attorney for the Fifteenth Circuit of the State of Florida, prosecuting for said State, without showing of his authority to so sign the said indictment.

"8. That said indictment is vague, indefinite, argumentative and uncertain," which motion coming on to be heard on the 15th day of March, 1927, was overruled. Thereupon, the defendants filed a motion for a change of venue which was supported by affidavit, which motion was granted in an order as follows:

"This cause came on to be heard upon the application of the defendants for a change of venue, upon the written motion of the defendants and accompanying affidavits, exhibits and testimony orally taken in open court, and after argument of counsel, the court being fully advised in the premises, it is considered, ordered and adjudged that the said application for change of venue be, and the same is hereby granted, and it is ordered that this case be, and the same is hereby transferred to the Circuit Court of the Twenty-first Judicial Circuit of the State of Florida in and for Indian River County, and the clerk of this court is directed to immediately enter of record the proceedings for change of venue and transmit all original papers filed in the case, with a certified copy of the entries in the record relating to the case, to the clerk of the Circuit Court in and for Indian River County, Florida, retaining, how-

ever, a copy of all the papers transmitted, and it is further directed that all state's witnesses be immediately recognized to appear before the Circuit Court in and for Indian River County, Florida, at Vero Beach, in the said county, at ten o'clock A. M., on the 28th day of March, A. D., 1927.

"ORDERED AND DONE in open court at Fort Pierce, Florida, this March 15th, 1927."

Thereupon the defendants were rearraigned on the indictment and pleaded "not guilty."

Thereafter, on the 23rd day of March, 1927, Honorable Elwyn Thomas, judge, made and caused to be entered in the Circuit Court of Indian River County, an order recusing himself in the following language:

"It appearing to the court that there is docketed for trial at this term of court the case of State of Florida versus John Truman Lockhart, George Clive Gourley, William Augustin Lee, Phil Ralph Ferrell, Archibald Brownlee and Fred Brownlee, charged with murder in the first degree said to have been committed in St. Lucie County, Florida, on the 4th day of February, 1927, upon one Perley Sylvester Thomas; and it further appearing that the motion for change of venue of said cause from St. Lucie County, Florida, was granted and that the cause was transferred to Indian River County, Florida; and it further appearing that the judge of this court was related to the said Perley Sylvester Thomas, relationship being second cousin; and that the judge of this court is therefore disqualified to sit in said cause; the judge of this court does therefore, certify his disqualification and declines to take jurisdiction of said cause.

"DONE AND ORDERED in open court at Vero Beach, Florida, March 23rd, A. D., 1927."

And, thereafter, on the 24th day of March, 1927, the Governor made an order assigning Judge Jefferson B.

Browne of the Twentieth Judicial Circuit to preside at the trial at the term of court then to be had in Indian River County, and on the 29th day of March, 1927, at a term of the Circuit Court of the Twenty-first Judicial Circuit in and for Indian River County, the defendants, having been theretofore arraigned and pleaded not guilty, were put on trial under the charge as presented by the above mentioned indictment with Judge Jefferson B. Browne officiating as judge. The trial resulted in a verdict as follows:

"We the jury find Fred Brownlee guilty of murder in the first degree, and Phil Ralph Farrell guilty of murder in the second degree; and George Clive Gourley guilty of murder in the second degree. So say we all. Signed,

"ROY L. KINNEY,
Foreman."

Under this verdict Gourley and Farrell were each sentenced to state prison for life and Brownlee was sentenced to death by electrocution. Motion for new trial was made and denied.

Writ of error was sued out to this Court.

There were forty-nine (49) assignments of error, of which the 9th, 10th, 13th, 14th, 16th, 23rd, 34th, 35th, 36th, 39th, 40th, 46th, 47th, and 48th were specifically abandoned. The 2nd and 44th assignments of error have not been argued by plaintiffs in error and therefore, are deemed and held to be abandoned, as is also the 32nd assignment of error because, it is merely restated in brief without argument. The remaining assignments of error are as follows:

"1. The judge of the Circuit Court for the Twenty-first Judicial Circuit in and for St. Lucie County, Florida, erred in holding himself disqualified, and, in entering his

order of disqualification of date February 23, 1927.''
(Record, Page 5.)

"3. The judge of the Circuit Court for the Twenty-
first Judicial Circuit in and for St. Lucie County, Flor-
ida, to wit: Elwyn C. Thomas erred in holding himself
disqualified, and, in entering his order of disqualification
of date March 23, 1927.'' (Record, page 47.)

"4 The Circuit Court in and for Indian River County
never acquired jurisdiction to try and determine said
cause.

"5. The court erred in refusing to accept the verdicts
returned in said cause, and, in ordering and directing the
jury to retire and reform their verdict.

"6. The court erred in giving the jury Charge Num-
ber Eleven of its own motion, as follows: 'A felon is one
who has committed a felon. If you find from the evidence
that Perley Sylvester Thomas was a felon fleeing from
justice, or was doing or committing any of the acts de-
scribed herein, then the killing of Thomas was justifiable.'

"7. The court erred in giving the jury Charge Number
Twelve of its own motion, as follows: 'Homicide is ex-
cusable when committed by accident and misfortune in
doing any lawful act by lawful means with usual ordinary
caution, and without any unlawful intent, or by accident
and misfortune in the heat of passion, upon any sudden and
sufficient provocation, or upon a sudden combat, without
any dangerous weapon being used and not done in a cruel
and unusual manner. But all these facts must concur and
the absence of any one of them will render the homicide
not excusable and the homicide is not excusable if the act
causing it is unlawful or if it is done in an unlawful or
culpably negligent manner.'

"8. The court erred in giving the jury Charge Number
Fourteen of its own motion, as follows: 'A premeditated

design is a fully formed conscious purpose to take life, formed upon reflection and entertained in the mind before, and at the time the homicide was committed. The law does not prescribe the exact period of time which must elapse between the formation of, and the execution of the intent to take life, in order to render the design a premeditated one. It may exist for only a few moments and yet be premeditated, if the design was formed a sufficient length of time before its execution to admit of some reflection on the part of the party entertaining it, and the party at the time of the execution of the intent was fully conscious of a settled and fixed purpose to kill and of the consequences of carrying such purpose into execution; where such state of mind exists, the intent or design would be 'premeditated,' within the meaning of the law, although the execution followed closely upon the formation of the intent. The question of premeditated design is a question of fact to be found by the jury from the evidence beyond a reasonable doubt like every other material fact in the case, but the law does not require that a premeditated design be proved only by positive testimony. The existence of a premeditated design, as well as its formation, are operations of the mind, as to which positive testimony can not always be obtained, consequently the law recognizes that it may be proven by circumstantial evidence. It will be sufficient proof of such premeditated design if the circumstances attending the homicide and the conduct of the accused convince you beyond a reasonable doubt and to a moral certainty of the existence of such premeditated design at the time of the homicide.'

"11. The court erred in giving Charge Number Eighteen of its own motion, as follows: 'If you find from the evidence in this case, beyond a reasonable doubt that any one of the defendants, in St. Lucie County, Florida, on

February 4th, 1927, feloniously and from and with a pre-meditated design to kill Perley Sylvester Thomas, unlaw-fully shot the said Perley Sylvester Thomas with a pistol and killed him, and that the other defendants, or either of them, were present and unlawfully and from and with a premeditated design to kill the said Perley Sylvester Thomas, then and there advised, aided and abetted, counseled or assisted the defendant who shot and killed Perley Sylvester Thomas, to kill him, it will be your duty to find the defendant who did the killing and any of the other defendants who advised, aided and abetted, counseled or as-sisted him, guilty of murder in the first degree. If you find however, that only one of the defendants was present and then and there advised, aided and abetted, counseled or as-sisted the defendant who did unlawfully kill Perley Syl-vester Thomas, it will be your duty to find the one who ad-vised, aided and abetted, counseled or assisted, guilty and find the one whom you find from the evidence, did not then and there advise, aid, bet, counsel or assist the party who did the killing, not guilty.'

"12. The court erred in giving the jury Charge Num-ber Nineteen of its own motion, as follows:    'When sev-eral persons combine together to commit an unlawful act, each is criminally responsible for the acts of his associates committed in furtherance or prosecution of the common design, and if several persons combine to do an unlawful act and in prosecution of the common object a culpable homicide results, all are alike criminally responsible for the probable consequences that may arise from the perpetra-tion of the unlawful act they set out to accomplish.   The immediate injury from which death ensues is considered as proceeding from all who are present aiding and abetting and injury done, and the actual perpetrator is considered

as the agent of his associates. His act is their act as well as his own, and all are equally criminal.'

"15. The court erred in giving the jury Charge Number Twenty-two of its own motion, as follows: 'Before one not reasonably free from blame in the inception of the difficulty can justify homicide under the plea of self defense, he must have honestly and bona fide declined the combat.'

"17. The court erred in giving the jury Charge Number Twenty-four of its own motion, as follows: 'In order to justify the taking of human life, the accused must have used all reasonable means within his power and consistent with his own safety to avoid the danger and to avert the necessity of taking human life.'

"19. The court erred in giving the jury Charge Number Twenty-eight of its own motion, as follows: 'An officer of the United States, including an immigration border patrol officer, had the lawful right, on February 4th this year, to arrest without warrant, any person who, in the presence of such officer, harbored or concealed, or attempted to harbor or conceal, or assisted or abetted another to conceal, in any place, including any conveyance or vehicle, any alien not duly admitted by an immigrant inspector or not lawfully entitled to enter or to reside within the United States. But such officer did not have the right to arrest a person who had not violated the law, and concerning whom such officer had no reasonable grounds to believe was a violator of the law.'

"20. The court erred in giving the jury Charge Number Twenty-nine of its own motion, as follows: 'Under the immigration laws of the United States any authorized employee of the Bureau of Immigration has the power, without warrant, to search for aliens, any conveyance or vehicle in which he believes aliens are being transported,

concealed or harbored, provided the facts and circumstances within the knowledge of the officers and of which they had reasonable trustworthy information, were such in themselves to warrant a man of reasonable caution in the belief that such conveyance or vehicle was being unlawfully used for transporting, harboring or concealing aliens unlawfully within the United States. This does not give immigration officers the right to search a conveyance or vehicle without a warrant, unless there are facts and circumstances within his knowledge, and of which he has reasonable trustworthy information, were such in themselves as to warrant a man of reasonable caution in the belief that such conveyance or vehicle was being used unlawfully for the purpose of transporting, harboring or concealing aliens unlawfully within the United States; and their authority does not extend to searching without a search warrant any and all automobiles in the United States, and not in the act of entering or attempting to enter the United States, at an international boundary.'

''21. The court erred in giving the jury Charge Number Thirty-one of its own motion, as follows: 'If therefore you find from the evidence, that the facts and circumstances within the knowledge of the defendants or any of them, were such in themselves to warrant a man of reasonable caution to the belief that Perley Sylvester Thomas on the night of February 4th, 1927, was an alien unlawfully in this country, or that he was transporting, harboring or concealing an alien or aliens in his automobile, the defendants had the right to stop and search his car without a search warrant. But, if you find from the evidence that there were no facts and circumstances within the knowledge of the defendants or any of them, of which they had reasonable and trustworthy information that Perley Sylvester Thomas was an alien unlawfully in this country, or that he was

transporting, concealing or harboring an alien or aliens in his car on that night, then the immigration patrol had no authority to stop and search his automobile without a search warrant, and he had the right to ignore their command to stop and proceed about his business.'

"22. The court erred in giving Charge Number Thirty-two of its own motion, as follows: 'Immigration officers are not authorized to stop every automobile on the chance of finding aliens being unlawfully transported, harbored or concealed in such automobile, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped in crossing an international boundary. But those lawfully within the country, entitled to use of the public highways, have a right to free passage without interruption or search, unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are engaged in illegally transporting, harboring or concealing aliens unlawfully in the United States.'

"23. The court erred in giving the jury unnumbered charge of its own motion, as follows: 'Under this indictment, if the evidence convinces you of the guilt of these defendants, beyond a reasonable doubt, you may find them guilty of murder in the first degree, or murder in the second degree, or of any lesser degree of unlawful homicide; or you may find any one or two of them guilty of murder in the first degree, and find the other or others guilty of murder in the second degree, or any lesser degree of unlawful homicide, or you may find any one or two guilty of such degree of homicide as the evidence warrants, and acquit any of them whom the evidence does not satisfy you beyond a reasonable doubt to be guilty.'

"24. The court erred in refusing to give the following charge requested by the defendants: 'The court charges

you when an officer in the performance of what he reasonably conceives to be his duty as such transcends his authority and invades the rights of individuals, but does not act criminally or wantonly, he is answerable to the government or power under which he was acting, but is not liable to answer to criminal process of a different government. Hence, if you find from the evidence that the defendants or either of them were at the time of the alleged homicide officers of the Immigration Patrol Service of the United States, and as such officers attempting to halt the deceased for the purpose of ascertaining whether or not the car which he was then driving contained aliens being transported into the United States, and that the deceased refused to halt or to submit to such inspection and armed himself for the purpose of resisting said officers and that the deceased lost his life by the reason of the efforts made by the defendants or either of them to overcome such resistance, and that they did not act criminally or wantonly, then the court charges you that you should find the defendants not guilty.'

"25. The court erred in refusing to give the following charge requested by the defendants: 'The court charges you that an officer charged with maintaining the supremacy of the law, or executing its mandates, must of necessity act on the aggressive in many instances, and is not confined in the use of physical force to that which may be lawfully used by a private person in his relations with others; he is clothed with authority to use such force as may be necessary to the proper performance of the functions of his office though death may result, and if you find from the evidence in this case that the defendants or any of them were officers of the Immigration Patrol Service of the United States and as such were in the lawful discharge of their duties as such, and in pursuance of the enforcement

of the laws of the United States of America, the deceased lost his life, and if you find that the defendants did not act with any criminal intent, or wantonly, or from a premeditated design to effect the death of the said Thomas, then you should find said defendants or such of them so acting not guilty.'

''26. The court erred in refusing to give the following charge requested by the defendants: 'The court charges you that an officer in the discharge of his duties need not wait until another actually assails him before resorting to force; if it is apparent that such officer intends and is able to resist with violence the officer may at once use such force as may appear to be necessary, and if you find from the evidence that the defendants were officers of the Immigration Patrol Service and were lawfully attempting to halt the deceased and if you further find from the evidence that the deceased so conducted himself by a display of force as to lead a reasonably cautious and prudent man to believe, that he intended to resist by force, then the court charges you that the defendants as such officers had the right and it was their duty to stand their ground and to use sufficient force to accomplish the purpose of halting the deceased.'

''27. The court erred in refusing to give the following charge as requested by the defendants: 'The court charges you that an officer in the discharge of his duty when assailed or resisted is not bound to retreat or give way. He may oppose force to force, sufficient to overcome the resistance he encounters, or to subdue the efforts of the party offering resistance, even to the extent of taking human life. And if he uses no more force than is reasonably necessary to accomplish his duty he, or they, should be acquitted on a prosecution for killing the person sought to be halted or detained.'

"28. The court erred in refusing to give the following charge requested by the defendants: 'If you find from the evidence in this case that the defendants were officers of the Immigration Patrol Service of the United States, and as such officers were engaged in the performance of any duty imposed on them by the laws of the United States, you should find the defendants not guilty, unless you find that they acted wantonly or with criminal intent, and the court further charges you that it is incumbent on the State to prove that they so acted, by competent evidence beyond and to the exclusion of every reasonable doubt.'

"29. The court erred in refusing to give the following charge requested by the defendants: 'The court charges you that the defendants in this case are all indicted as principal, that is that each is charged with being the person who fired the fatal shot, and before you can convict any particular one of the defendants you must be convinced by the evidence beyond and to the exclusion of every reasonable doubt, that he fired the fatal shot, unless you further find from the evidence beyond a reasonable doubt that all or some of the defendants other than the one firing the fatal shot were present aiding and abetting from a premeditated design to effect the death of Thomas or were present aiding and abetting in the commission of some unlawful undertaking. And the court charges you that the halting of an automobile by officers of the Immigration Patrol Service of the United States, for the purpose of ascertaining whether or not aliens are being transported into the United States, where reasonable grounds to believe that such is the case exists, is authorized by Act of Congress, and is not an unlawful act.'

"30. The court erred in refusing to give the following charge requested by the defendants: 'If you find from the

evidence that the defendants were officers of the Immigration Patrol Service of the United States, and if you further find from the evidence that while attempting to lawfully search an automobile occupied by the deceased, and that while so attempting to search said automobile, the deceased fired upon said officers, and fled, then the court charges you, the defendants, or such of them as were officers of said Immigration Patrol had the right and authority to pursue the deceased for the purpose of apprehending or arresting him, and if you further find from the evidence that the deceased armed himself, persisted in his resistance, and was killed, then you should find the defendants not guilty, unless you find that the person firing the fatal shot acted criminally or wantonly, in which event you should find the person firing the fatal shot guilty of such degree of homicide as you should from the evidence deem him guilty of and the balance of the defendants not guilty.'

"31. The court erred in refusing to give the following charge requested by the defendants: 'The court charges you that it is a felony to resist an officer of the Government of the United States with a deadly weapon, and if you find from the evidence that the defendants were at the time of the homicide officers of the Border Patrol Service or acting in their aid and assistance and were lawfully attempting to ascertain if the automobile of the deceased contained aliens being transported into the United States and that while so doing the deceased fired on the defendants, or one of them, and fled, then the court charges you that they had a right to pursue the deceased and use all means necessary to his apprehension, even to taking human life.'

"33. The court erred in refusing to give the following charge requested by the defendants: 'The court further

charges you that officers are charged with the execution
of the laws and that they are bound to carry out and
perform them, and can not be required or permitted to re-
tire or retreat when assaulted or opposed, but must stand
and meet force with force, and if they kill in the neces-
sary performance of their duties the homicide is justifi-
able. It is likewise the duty of all persons whether offi-
cers or citizens, to uphold the law and prevent the com-
mission of felonious acts, and killing to prevent, or in
resistance of such acts in furtherance of and to sustain
the law is justifiable and no retreat is required. If in
this case you find from the evidence that the defendant,
Fred Brownlee, was acting at the instigation, and under
the direction of an officer of the law, and his acts were
done in the performance of his duty as such officer you
should acquit him.'

''37. The court erred in refusing to give the following
charge requested by the defendants: 'The court charges
you that in order to justify a defendant in taking human
life on the ground of self defense it is not necessary that
the danger be real, but it only need be apparent. And
if you find that at the time of firing the fatal shot the
defendant Brownlee was surrounded by such a condition
of affairs as to lead a reasonably cautious and prudent
man to believe that his life was in danger or he was in
danger of receiving great bodily harm, and that he did
so believe, or if you entertain a reasonable doubt on this
point then you should find the defendant Brownlee not
guilty, although you may believe that he was in no actual
danger.'

''38. The court erred in overruling defendants' motion
for new trial.

''41. The court erred in excluding from the evidence
Section 109 of Chapter 6 of Title 8, designated Aliens and

Citizenship of the Code of Laws of the United States of America, and in refusing to permit same to be read to the jury. (Page 326-327.)

"42. The court erred in refusing to permit counsel for defendants to read statutes of the State of Florida or to discuss them in the presence of the jury." (Page 327.)

"43. The court erred in excluding from the jury Section 110, Chapter 6 of Title 8, designated 'Aliens and Citizenship' of the Code of Laws of the United States of America, and sustaining the State's objection thereto." (Page 329.)

"45. The court erred in sustaining the State's objection to introduction of certificate of Secretary of Labor, and, in excluding same for the jury.' " (Pages 448-51.)

"49. The court erred in refusing to permit counsel for defendant to read to the jury or discuss Sections 109, 110 and 125, Chapter 6, Title 8, Laws of the United States of America." (Pages 458-459.)

The first and third assignments of error are considered together. These assignments seek to challenge the order of disqualification made by Judge Thomas. There appears in the record no timely objection to the action of Judge Thomas in recusing himself and therefore, the question of whether or not Judge Thomas was under legal disqualification is not before this Court. We may say, however, that the first duty of courts is to render righteous judgments and, next to the importance of righteousness of the judgment is the demand that such righteous judgments should be rendered in such manner as will not foster, beget or raise any inference or suspicion of the fairness or integrity of the judge. See in re Honolulu Consolidated Oil Co., 243 Fed. 348; 156 C. C. A. 128; Cotulla State Bank v. Herron, Texas, 202 S. W. 797; State v. Seattle Board of Education, 19 Wash. 8, 52 Pacific 317; 67 Am. S. R. 706; 40 L. R. A. 317.

If any party is dissatisfied with the action of a trial judge in declaring himself disqualified he must make timely objection and resort to his proper remedy, or else he will be considered as having waived his objection. State v. Voorheis, 41 La. 567, 6 Sou. 826.

Under the fourth assignment of error it is contended that the transcript of record fails to show any certificate of the clerk as to any copies of indictments, entries or proceedings in the Circuit Court of St. Lucie County. Hence, the Circuit Court of Indian River County never acquired jurisdiction. The transcript of the record is silent as to the certificate under which the change of venue was affected and, as no question of jurisdiction was raised in the court below, it will be assumed that the judges and the clerks of the court having duties to perform in connection with consummating the change of venue performed their duties in the manner required by law and that the proper certificates were made, executed and delivered and that the same were not directed to be included in the transcript of the record.

The fifth assignment of error is addressed to the action of the court in directing the jury, when they had presented what appeared to be verdicts as to each defendant separately, to return to the jury room and prepare *one* verdict to cover their findings. This, we think, was proper procedure and is not to be held as error.

The 6th, 7th, 8th, 11th, 12th, 15th, 17th, 18th, 19th, 20th, 21st, 22nd and 23rd assignments of error are based upon charges given by the court of its own motion. To determine the propriety of these charges we must consider the entire charge of the court and our determination as to the propriety of these charges would be of little benefit to the bench and bar, unless the bench and bar should be advised

as to the entire charge given by the court and, therefore, we will quote the entire charge, which was as follows:

"The defendants, George Clive Gourley, Phil Ralph Farrell and Fred Brownlee are on trial before you for murder in the first degree for the killing of Perley Sylvester Thomas.

"The defendants, and each of them, have pleaded not guilty, thus raising the question of their guilt or innocence, which is the issue you are to try.

"The indictment charges murder in the first degree, and that charge includes all the other degrees of unlawful homicide.

"1. The unlawful killing of a human being when perpetrated from a premeditated design to effect the death of the person killed, or any human being, or when committed in the perpetration of, or in the attempt to perpetrate any arson, rape, robbery, or burglary, shall be murder in the first degree.

"It is murder in the second degree when perpetrated by any act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual.

"2. Manslaughter is the killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable, or excusable homicide or murder.

"3. A person accused of crime is presumed to be innocent until his guilt has been established by proof beyond a reasonable doubt.

"4. By reasonable doubt is meant such a doubt as a reasonable man would have as to the guilt of the prisoner after hearing and weighing the evidence in the case.

"5. If you, as jurors, after carefully considering, weigh-

ing and comparing all the facts and circumstances testified
to, are unable to say that you are convinced to a moral cer-
tainty of the guilt of the prisoners, or any of them, then
you have a reasonable doubt and should acquit them, or
such one or more of them of whose guilt you have a reason-
able doubt.

"6. If, however, you are convinced by the evidence to a
moral certainty of the guilt of the defendants, or any of
them, it will be your duty to convict such of them of whose
guilt you are convinced beyond a reasonable doubt.

"7. It is incumbent upon the State to prove every mate-
rial allegation in the indictment.

"8. The presumption of innocence follows the accused,
and each of them, through the entire trial until their guilt,
or the guilt of any of them, has been proved beyond a rea-
sonable doubt.

"9. You are the sole judges of the credibility of the wit-
nesses and the weight and sufficiency of the evidence. It
is your province to say what testimony you believe and
what, if any, you do not believe, and it is your duty to find
a verdict upon that part of the testimony which you believe
to be true. In weighing the testimony you may consider
the manner of the witness on the witness stand; his bias, or
prejudice, if any; his apparent fairness or want of fairness;
the interest, if any, of the witness in the result of his testi-
mony; the intelligence or otherwise of the witness, in order
that you may judge of the correctness of his observation
and his ability to detail correctly and intelligently what he
has observed; the position of the witness, both at the time
of the giving of his testimony and at the time of the hap-
pening of the event testified about; the reasonableness or
otherwise of his testimony, as judged by your common sense
and every-day experience; any conflict or discrepancy as
to material questions which you may find to exist in the

testimony of the witness or the testimony of other witnesses whom you believe to have testified truthfully; and any corroborations in the testimony of other witnesses whom you believe to have testified truthfully.

"10. The killing of a human being is either justifiable or excusable homicide, or murder, or manslaughter, according to the facts and circumstances in the case. Homicide is justifiable (1) when committed by public officers and those acting by their command in their aid and assistance either in obedience to any judgment of a competent court, or when necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty, or when necessarily committed in retaking felons who may have been rescued or who have escaped, or when necessarily committed in arresting felons fleeing from justice; (2) when resisting any attempt to murder such person, or to commit a felony upon him; (3) when committed in the lawful defense of such person, and there shall be a reasonable ground to apprehend a design to commit a felony or to do some great personal injury and there shall be imminent danger of such design being accomplished.

"11. A felon is one who has committed a felony. If you find from the evidence that Perley Sylvester Thomas was a felon fleeing from justice, or was doing or committing any of the acts described herein, then the killing of Thomas was justifiable.

"12. Homicide is excusable when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel and unusual manner. But all

these facts must concur and the absence of any one of them will render the homicide not excusable, and the homicide is not excusable if the act causing it is unlawful, or if it is done in an unlawful or culpably negligent manner.

"13. If there are conflicting statements in the testimony, you should reconcile them, if in your power to do so. If, however, you find yourselves unable to reconcile such conflicting statements, then it will be your duty to entirely reject such portions of the testimony that you may not believe, and base your verdict upon that part of it that you believe to be true.

"14. A premeditated design is a fully formed, conscious purpose to take life, formed upon reflection and entertained in the mind before, and at the time the homicide was committed. The law does not prescribe the exact period of time which must elapse between the formation of, and the execution of the intent to take life, in order to render the design a premeditated one. It may exist for only a few moments and yet be premeditated, if the design was formed a sufficient length of time before its execution to admit of some reflection on the part of the party entertaining it, and the party at the time of the execution of the intent was fully conscious of a settled and fixed purpose to kill and of the consequences of carrying such purpose into execution; where such state of mind exists, the intent or design would be 'premeditated,' within the meaning of the law, although the execution followed closely upon the formation of the intent. The question of premeditated design is a question of fact to be found by the jury from the evidence beyond a reasonable doubt, like every other material fact in the case, but the law does not require that a premeditated design be proved only by positive testimony. The existence of a premeditated design, as well as its formation, are operations of the mind, as to which

positive testimony cannot always be obtained, consequently the law recognizes that it may be proven by circumstantial evidence. It will be sufficient proof of such premeditated design if the circumstances attending the homicide and the conduct of the accused convince you beyond a reasonable doubt and to a moral certainty of the existence of such premeditated design at the time of the homicide.

"15. The court charges you that the defendants in a criminal case have the right to take the stand and testify in their own behalf the same as any other witness, and their testimony goes to you to be judged and weighed by the same rules as you would judge the testimony of any other witness testifying in the case.

"16. Whoever counsels, hires or otherwise procures a felony to be committed, may be indicted and convicted as an accessory before the fact, either with the principal felon or after his conviction, or may be indicted and convicted of substantive felony, whether the principal has or has not been convicted or is or is not amenable to justice; and in the last mentioned case may be punished in the same manner as if convicted of being an accessory before the fact.

"17. Whoever aids in the commission of a felony, or is accessory thereto, before the fact, by counseling, hiring or otherwise procuring such felony to be committed, shall be punished in the same manner prescribed for the punishment of the principal felon.

"18. If you find from the evidence in this case, beyond a reasonable doubt that any one of the defendants, in St. Lucie County, Florida, on February 4th, 1927, feloniously and from and with a premeditated design to kill Perley Sylvester Thomas, unlawfully shot the said Perley Sylvester Thomas with a pistol and killed him, and that the other defendants, or either of them, were present and unlawfully and from and with a premeditated design to kill the said

Perley Sylvester Thomas, then and there advised, aided and abetted, counseled or assisted the defendant who shot and killed Perley Sylvester Thomas, to kill him it will be your duty to find the defendant who did the killing and any of the other defendants who advised, aided and abetted, counseled or assisted him, guilty of murder in the first degree. If you find, however, that only one of the defendants was present and then and there advised, aided and abetted, counseled or assisted the defendant who did unlawfully kill Perley Sylvester Thomas, it will be your duty to find the one who advised, aided and abetted, counseled or assisted, guilty, and find the one whom you find from the evidence, did not then and there advise, aid, abet, counsel or assist the party who did the killing, not guilty.

"19. When several persons combine together to commit an unlawful act, each is criminally responsible for the acts of his associates committed in furtherance or prosecution of the common design, and if several persons combine to do an unlawful act and in prosecution of the common object a culpable homicide results, all are alike criminally responsible for the probable consequences that may arise from the perpetration of the unlawful act they set out to accomplish. The immediate injury from which death ensues is considered as proceeding from all who are present aiding and abetting and injury done, and the actual perpetrator is considered as the agent of his associates. His act is their act as well as his own, and all are equally criminal.

"20. A principal in the first degree, and principals in the second degree are principals, and are punishable alike. The degrees are designed merely to indicate that one actually committed the felonious act, and that the others were present aiding and abetting the felonious act. All are equally guilty; and it is not material which one is alleged to have actually committed the felonious act if it is proven

beyond a reasonable doubt that one committed the act and the others were present and aided and abetted in the commission of the alleged felony.

"21. A homicide committed in self-defense, that is, in the defense of the life of the accused or to protect his person from imminent danger of great bodily harm is a lawful homicide and justifiable. The right of self-defense is recognized by law and surrounded by certain well-established rules. In the first place, a person relying upon self-defense to justify a homicide must himself be reasonably free from fault in the inception of the difficulty in which such homicide may be committed and it must be necessary, either actual or apparent, to resort to the means used in the particular instance to protect his life or person from imminent danger of death or great bodily harm. The necessity to take life, however, need not be actual. If the circumstances' surrounding the accused are such as would induce the ordinary prudent man to believe that he was in danger of death or great bodily harm, that is sufficient, although there was no danger in fact. One can not by his own act provoke a difficulty with his adversary, and having provoked such difficulty, act under the necessity produced by this difficulty and kill his adversary and justify homicide under the plea of self-defense.

"22. Before one not reasonably free from blame in the inception of the difficulty can justify homicide under the plea of self-defense, he must have honestly and *bona fide* declined the combat.

"23. To excuse homicide on the ground of self-defense, the defendant must not only believe, but must have reason to believe that he is in imminent danger of death or great bodily harm, and that it was necessary for him to take the life of the deceased, before he would be justified under the law of self-defense. When a man acting from the circum-

stances by which he is surrounded as they appear to him, takes the life of his fellow man, he does so at his peril; and he cannot justify such killing unless these circumstances are such as would induce a reasonably prudent and cautious man to believe it necessary to save his own life or to save himself from great bodily injury, to act as the defendant acted.

''24. In order to justify the taking of human life, the accused must have used all reasonable means within his power and consistent with his own safety to avoid the danger and to avert the necessity of taking human life.

''25. An officer of the law in the performance of his duty is not required to retreat, but has the right to stand his ground. An officer merely by making an illegal arrest does not thus become an aggressor so as to prevent him from pleading self-defense.

''26. An officer of the United States, acting in the performance of his duties, under an act of the Congress, and those called to their aid and assistance, may lawfully do whatever may be reasonably necessary, actual or apparent, to accomplish the purposes of their employment. But to justify an act otherwise in violation of the laws of the State of Florida, it must appear that the act was done by the officer in the discharge of his duty as an officer of the United States, and that such act was reasonably necessary, actual or apparent, to the accomplishment of the purposes of the officer's employment. If such officer goes beyond his duties as an officer and without reasonable necessity therefor and does an act in violation of the laws of the State of Florida, he is amenable to prosecution for his unnecessary acts done in violation of the laws of this State. His office will protect him to the extent of the proper performance of his official duties, and everything reasonably done in the performance of his official duties; but beyond

his duties as an officer, he has no protection merely because he is an officer of the United States, or because he has been called to the aid and assistance of an officer of the United States. For an act done outside of his official duties and done in violation of the laws of this State, an officer of the United States can not justify merely on the ground that, at the time, he was an officer of the United States. And one called to the aid and assistance of an officer of the United States cannot justify his act otherwise unlawful, if the officer himself was acting outside his lawful duties. Whether the defendants, or any of them, were at the time charged in the indictment, acting lawfully or unlawfully, is a question of fact to be found by the jury from the evidence submitted for your consideration. If the defendants, or any of them, were acting lawfully, or if you have a reasonable doubt as to whether they were acting lawfully, you should acquit them, or such of them as acted lawfully.

"27. On February 4th, this year, the laws of the United States provided: Whoever shall conceal or harbor or attempt to conceal or harbor, or assist or abet another to conceal or harbor, in any place, including any conveyance or vehicle, any alien not duly admitted by an immigrant inspector or not lawfully entitled to enter or to reside within the United States shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding $2,000.00 and by imprisonment for a term not exceeding five years.

"28. An officer of the United States, including an immigration border patrol officer, had the lawful right, on February 4th, this year, to arrest without warrant any person who in the presence of such officer, harbored or concealed, or attempted to harbor or conceal, or assisted or abetted another to conceal, in any place, including any conveyance or vehicle, any alien not duly admitted by an immigrant

inspector or not lawfully entitled to enter or to reside within the United States.

"But such officer did not have the right to arrest a person who had not violated the law, and concerning whom such officer had no reasonable grounds to believe was a violator of the law.

"29. Under the immigration laws of the United States, any authorized employe of the Bureau of Immigration has the power, without warrant, to search for aliens, any conveyance or vehicle in which he believes aliens are being transported, concealed or harbored, provided the facts and circumstances within the knowledge of the officers and of which they had reasonable, trustworthy information, were such in themselves to warrant a man of reasonable caution in the belief that such conveyance or vehicle was being unlawfully used for transporting, harboring or concealing aliens unlawfully within the United States. This does not give immigration officers the right to search a conveyance or vehicle without a warrant, unless there are facts and circumstances within his knowledge, and of which he has reasonable, trustworthy information, were such in themselves as to warrant a man of reasonable caution in the belief that such conveyance or vehicle was being used unlawfully for the purpose of transporting, harboring or concealing aliens unlawfully within the United States; and their authority does not extend to searching without a search warrant, any and all automobiles in the United States, and not in the act of entering or attempting to enter the United States, at an international boundary.

"30. The officers of the immigration patrol have the lawful right to stop and search automobiles without a search warrant, when the facts and circumstances within their knowledge of which, as immigration officers, they had reasonable, trustworthy information, were such in them-

selves as to warrant a man of reasonable caution to the belief that an alien or aliens were being transported, harbored or concealed in such automobiles.

"31. If, therefore, you find from the evidence, that the facts and circumstances within the knowledge of the defendants, or any of them, were such in themselves to warrant a man of reasonable caution to the belief that Perley Sylvester Thomas on the night of February 4, 1927, was an alien unlawfully in this country, or that he was transporting, harboring or concealing an alien or aliens in his automobile, the defendants had the right to stop and search his car without a search warrant. But if you find from the evidence that there were no facts and circumstances within the knowledge of the defendants or any of them, of which they had reasonable and trustworthy information that Perley Sylvester Thomas was an alien unlawfully in this country, or that he was transporting, concealing or harboring an alien or aliens in his car on that night, then the Immigration Patrol had no authority to stop and search his automobile without a search warrant, and he had the right to ignore their command to stop and proceed about his business.

"32. Immigration officers are not authorized to stop every automobile on the chance of finding aliens being unlawfully transported, harbored or concealed in such automobile, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search.

"Travelers may be so stopped in crossing an international boundary. But those lawfully within the country, entitled to use of the public highways, have a right to free passage without interruption or search, unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are engaged in

illegally transporting, harboring or concealing aliens unlawfully in the United States.

"Under this indictment, if the evidence convinces you of the guilt of these defendants, beyond a reasonable doubt, you may find them guilty of murder in the first degree, or murder in the second degree, or of any lesser degree of unlawful homicide; or you may find any one or two of them guilty of murder in the first degree, and find the other or others guilty of murder in the second degree, or any lesser degree of unlawful homicide, or you may find any one or two guilty of such degree of homicide as the evidence warrants, and acquit any of them whom the evidence does not satisfy you beyond a reasonable doubt to be guilty.

"If you find the defendants guilty you must in your verdict set forth the distinct degree of unlawful homicide of which you find them guilty; murder in the first degree, or of murder in the second degree, or of manslaughter; and the form of your verdict should be in the following like form:

"We, the jury, find the defendants guilty of (filling in the degree of the crime so found by you as jurors), so say we all, and let one of your number sign it as foreman.

"Should you find the defendants not guilty, you will say:

"We, the jury, find the defendants not guilty, so say we all, and let one of your number sign it as foreman.

"If you find one or two of the defendants guilty and the other or others not guilty your verdict should be in the following like form:

We, the jury, find (naming him or them) guilty of (naming the degree of the crime) and find (naming him or them) not guilty, so say we all, and let one of your number sign it as foreman.

"If you are convinced to a moral certainty beyond a

reasonable doubt that the defendants, or any of them, are guilty of murder in the first degree, a majority of the jury may recommend him or them to the mercy of the court, and such recommendation will change the penalty from death to imprisonment for life.''

When taken in connection with the entire charge, we can not hold that the charges, parts of charges, or either of them, complained of in the above mentioned assignments of error constituted reversible error.

It will be observed that assignments of error numbered 24, 25, 26, 27, 28, 29, 30, 31, 33 and 37 are based upon the refusal of the court to give certain charges asked for by the defendants.

These proposed charges so refused have been quoted in the assignments of error and, therefore, it is not necessary to requote them, but it may be helpful to quote those charges which were given by the court at the request of the defendants, as these charges so given, taken together with the charge of the court of its own motion, have controlling bearing on the question as to whether or not the refusal to give the charges requested constituted reversible error. The charges given at the request of the defendants were as follows:

''The court charges you that each and every one of the defendants in this case is presumed to be innocent until proven guilty by competent evidence beyond and to the exclusion of every reasonable doubt.''

''The court charges you that an officer in the discharge of his duty when assailed or resisted is not bound to retreat or give way. He may oppose force to force, sufficient to overcome the resistance he encounters, or to subdue the efforts of the party offering resistance, even to the extent of taking human life.''

"The court charges you that if you find from the evidence that the defendants, or either of them, were at the time of the alleged homicide surrounded by such a condition of affairs as to cause a reasonable, cautious and prudent man to believe that his life was in danger, or that he was in danger of receiving great bodily harm, and that he, or they, did so believe and acted upon such appearances and belief, then you should find the defendants, or those so acting and believing, not guilty, although you may believe from the evidence that the danger did not actually exist."

"The court charges you that homicide is justifiable when committed by public officers and those acting by their command and in their aid and assistance when acting in the discharge of a legal duty, and if you find from the evidence in this case that the defendants were officers of the Immigration Border Patrol Service of the United States or were acting in the aid and assistance of such officers and that the homicide was necessarily committed in overcoming actual resistance to the discharge of some legal duty, then you should find the defendants or those so acting not guilty."

"To hold a defendant guilty as aider and abetter in homicide it is not only necessary that he should have aided or assisted in the commission of the crime but also that he should have had knowledge of and shared in the design of the principal, and if you find from the evidence in this case that one of the three defendants fired the fatal shot before you could find the other two defendants guilty you must be satisfied from the evidence and beyond a reasonable doubt that they knew of his intentions and shared in them."

Considering the charges requested by the defendants and refused in connection with the charges given, we

find no error apparent in the action of the court in refusing to give the same.

The 38th assignment of error is that the court erred in overruling defendants' motion for new trial under which may be considered the sufficiency of the evidence to support the verdict which we will discuss later.

The 41st, 42nd, 43rd and 49th assignments of error are addressed to the refusal of the court to allow counsel to read certain statutes to the jury. The rule that the law and statutes applicable to any case are to be given to the jury by the court and not by counsel, is too elementary and universally recognized to require any discussion here.

So this brings us to the consideration of whether or not there is substantial evidence found in the record to support the verdict. There is found in the record evidence to support this statement of facts: That the accused with other officers charged with the duty of enforcing the immigration laws of the United States stationed themselves on a public highway at a secluded spot, in the night time, for the purpose of ascertaining whether or not any aliens attempted to pass that way; that in pursuance of carrying out this purpose they, without authority of law and without legal excuse, proceeded to stop and attempted to stop peaceful and law-abiding citizens who happened to be traveling on that highway. That the deceased came that way and that the accused, with their associates, without believing and without having any reason to believe, that the deceased was transporting aliens or that any aliens were being conveyed at that time by him, commanded him to stop that they might make search of his car. That the deceased was a traveling salesman pursuing his lawful business in a lawful manner and that he attempted to escape from the accused and their associates when he found himself being held up by them on the public highway at a se-

cluded spot and that thereupon the accused and their associates unlawfully and without reasonable excuse or justification fired upon the deceased and as he fled they continued to fire upon him with deadly weapons and that then the accused got into a high powered automobile and chased the deceased along the highway for a number of miles; that by some means, not disclosed in the record, the automobile in which the accused were being conveyed passed the car in which the deceased was driving; that they turned and went back down the road, toward the place from which they had come, and that they passed the deceased and immediately turned about and again gave chase; that they reloaded their pistols as they were chasing the deceased; that finally they overtook him on the highway and that there they shot and killed him. There were two wounds found, one in the arm of the deceased and the other in his face and neck, the latter being fatal. The evidence is convincing that Brownlee did the fatal shooting. Besides these wounds in the body of the deceased there was at least seven shots fired into the automobile in which he was riding, some from the front, some from the side and some from the rear.

It is true that there is other evidence which does not agree with this state of facts, but there was sufficient *legal* evidence for the jury to conclude that this state of facts was that which actually existed and, furthermore, that the deceased did not fire his pistol on the night when he was killed. We have considered the law as we deem it applicable to this case in quoting and approving the charges given by the trial court and, under the law as so stated, coupled with the above statement of facts, of which we find vivid portrayal in the evidence. We must agree with the trial judge in holding that under the law the verdict as to each of the defendants was supported by substantial evidence and that there was no showing that the jury was in-

fluenced by anything outside the evidence in arriving at its verdict. It may be that there are extenuating circumstances which would appeal to a Board of Pardons, whose function it is to temper justice with mercy, but it is the province of this Court to determine only whether or not reversible error has occurred in the trial of the cause and to this we must answer "No."

The judgment should, therefore, be affirmed and it is so ordered.

Affirmed.

ELLIS, C. J., AND WHITFIELD AND STRUM, J. J., concur.

TERRELL AND BROWN, J. J., dissent.