The LEGAL AID SOCIETY OF NEW YORK and Anthony F. Marra, Petitioners,

v.

Hon. William B. HERLANDS, United States District Judge for the Southern District of New York, Respondent.

Lowell M. BIRRELL, Petitioner,

v.

Hon. William B. HERLANDS, United States District Judge for the Southern District of New York, Respondent.

UNITED STATES of America,

v.

Lowell M. BIRRELL, Defendant-Appellant.

Nos. 32419, MR–1823, MR–2056.

United States Court of Appeals Second Circuit.

Argued June 11, 1968.

Decided June 14, 1968.

Certiorari Denied Jan. 13, 1969.

See 89 S.Ct. 649.

---

7. 161 La. 313, 108 So. 549 (1926).

See also D.C., 286 F.Supp. 885.

Leon B. Polsky, New York City, for The Legal Aid Society of New York and Anthony F. Marra.

Lowell M. Birrell, pro se.

Stephen F. Williams, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern Dist. of New York), for the United States.

Before FRIENDLY, SMITH and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge:

These three applications are the latest episode in the stormy voyage of United States v. Birrell, S.D.N.Y., 286 F.Supp. 885. The indictment was filed July 20, 1961, but defendant was then outside the United States and did not return until April 23, 1964. The case finally went to trial before Judge Herlands and a jury on December 4, 1967. Mr. Birrell, himself an experienced attorney, was represented by Charles N. Brower, Esq., counsel assigned under the Criminal Justice Act, with whom Martin Portnoy, Esq., of the staff of The Legal Aid Society of New York, was associated. On December 28, 1967, a jury found the defendant guilty on ten counts of selling unregistered securities and one count of conspiracy.

The court had ruled prior to trial that the issue whether the Government's case was tainted by the use of evidence derived from the many records found by another judge to have been illegally seized, see United States v. Birrell, 242 F.Supp. 191 (S.D.N.Y.1965), should be reserved for post-trial hearing in the event of conviction, United States v. Birrell, 269 F.Supp. 716, 725 (S.D.N.Y. 1967). Recognizing that this hearing would be burdensome, the court on January 4, 1968, granted Mr. Brower's application to be relieved and appointed The Legal Aid Society as sole counsel. The Society obtained the services of Leonard Sandler, Esq., as senior counsel; he was assisted by Mr. Portnoy until the latter's resignation from the staff of the Society on March 22, 1968, by another attorney-investigator, and by an investigator. At the court's instruction the Government presented its direct case in the taint hearing on February 20, 21 and 23, 1968, after which the defense was given until April 8 to prepare its cross-examination.

Just before the beginning of the taint hearing, Birrell moved to have The Legal Aid Society relieved, because of disagreements as to strategy and tactics and also because he preferred a lawyer from a large office who could and would devote himself solely to the case. Concluding that Birrell had received and would continue to receive effective representation from The Legal Aid Society, the court denied the motion. Relations between Birrell and his assigned counsel deteriorated during the three days of the Government's presentation and prior to and during the two days of cross-examination on April 8 and 9.

On April 10 Birrell again moved to relieve The Legal Aid Society, this time asking to proceed *pro se*. The court believed that, before it acted on the latter request, Birrell should have a medical examination to determine whether he was physically able to conduct his defense; this was done with his consent. On April 15 the physician reported there was "a history of narcolepsy, which causes the patient to fall asleep periodically for brief intervals," but that he saw no reason why Birrell could not conduct his own trial. After further efforts to explore the issue, the court found itself "unable to determine whether defendant was medically able to conduct his own defense" and denied the motion. Meanwhile Birrell had begun a state court suit against The Legal Aid Society, Mr. Carr, its attorney-in-chief, and Mr. Sandler, seeking $25,000,000 damages for malpractice.[1]

This led The Legal Aid Society to move to be relieved. In light of its motion, the court reopened consideration of Birrell's request to proceed *pro se*. He countered that he was no longer requesting that relief and, indeed, had been bluffing in seeking the opportunity. The court thereupon ordered Birrell committed to Bellevue Hospital Center to obtain an expert psychiatric opinion as to his competence to conduct his defense; Birrell declined to cooperate with the examining physicians.[2]

On May 24, 1968, the court denied The Legal Aid Society's motion to be relieved and what it assumed to be a renewed motion by Birrell to have it relieved. Granting that "generally speaking, a lawsuit by a client against his lawyer may be considered as an automatic and effective termination of the attorney-client relationship," the judge refused to countenance "the ploy of suing his own attorney in order to force the Court to accede to his demand for new counsel." The court pertinently cited Swope v. McDonald, 173 F.2d 852 (9 Cir. 1949) (*en banc*), holding that the filing by a defendant of a "palpably groundless" malpractice charge against his lawyer with the state bar association did not render ineffective the attorney's continued representation in a criminal trial. Noting that "if defendant persists in his present course of conduct making it impossible for honorable self-respecting attorneys to represent him, it may well be that his actions would amount to a waiver of the right to the assistance of counsel," the judge thought that stage had not yet been reached. At the same time he ruled adversely on Birrell's motion to reargue an order made on December 28, 1967, immediately after the verdict, which had remanded Birrell on the ground that, in light of his previous conduct, there was

1. The complaint alleges only that the defendants undertook to represent Birrell and held themselves out as ready, willing and able to defend him "in accordance with proper professional standards of ethics, ability and facilities," and that they "have been guilty of gross negligence, malpractice, violation of professional ethics, misconduct and other improper acts and practices." No supporting facts are alleged. Defendants have answered, demanding dismissal.

2. Our account of the proceedings is a summary of the more detailed statement in Judge Herland's opinion. D.C., 286 F.Supp. 885. We reject Birrell's suggestion that, although there has been no showing of significant error, we are nevertheless obliged to examine the entire record or even afford opportunity for an evidentiary hearing to determine whether the judge's statement is correct and complete in every detail. Compare proposed Federal Rules of Appellate Procedure 21.

a substantial risk of flight, 18 U.S.C. § 3148.

Both The Legal Aid Society and Birrell now ask us to issue mandamus to require Judge Herlands to relieve the Society.[3] An appeal has been taken from the order on reargument denying bail and Birrell moves *pro se* that counsel be assigned.

 Courts of appeals must be wary lest overuse of the writ of mandamus undermine the federal policy against interlocutory review—a policy particularly weighty in criminal cases where "All our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court." Will v. United States, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967). They must be careful also lest by too frequent resort to the writ they take over discretionary judgments best made by the court having knowledge of and responsibility for the trial. The force of these considerations is well illustrated here where the applications for mandamus come in the midst of a post-trial hearing, and is diminished only slightly by the circumstance that, in contrast to the *Will* case, in this instance the defendant rather than the Government is seeking relief. So far as Birrell's application is concerned, any error in the judge's refusal to relieve The Legal Aid Society can be considered on an appeal from the sentence if there should be one; indeed it is rather apparent that Birrell will assert inadequate representation as to the portion of the taint hearing already held even if new counsel were now to be substituted. The Legal Aid Society's application stands differently since an ultimate holding of error on an appeal by Birrell after sentence would come too late to ease the predicament of which the Society now complains. While the situation bears some resemblance to a judge's refusal to recuse himself under 28 U.S.

C. § 144, as to which we have held, for reasons forcefully stated by Judge Hastie in Green v. Murphy, 259 F.2d 591, 595 (3 Cir. 1958) (concurring opinion), that mandamus will lie, see Rosen v. Sugarman, 2 Cir., 357 F.2d 794 (1966); United States v. Simon, 393 F.2d 90 (1968); the differences are weightier. Refusal of recusation goes to the constitution of the tribunal which is to conduct the trial, an issue which if not jurisdictional in an "arbitrary and technical" sense, see Will v. United States, supra, 389 U.S. at 95, 88 S.Ct. 269, comes exceedingly close to jurisdiction and thus is within the traditional concept of mandamus, Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); refusal to allow a lawyer's withdrawal is considerably more remote.

It is enough for decision that, as the Supreme Court has sharply reminded the courts of appeals, "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." Will v. United States, supra, 389 U.S. at 95, 88 S.Ct. at 273, quoting DeBeers Consolidated Mines Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). The showing here does not remotely approach that standard. Judge Herlands was faced with an administrative problem of utmost difficulty. Quite obviously, if all other things had been anywhere near equal, The Legal Aid Society and Birrell would have been granted the divorce desired by both. But they were not. The judge had to weigh also the near certainty that appointment of new counsel would put the taint hearing over until the fall—nearly a year after Birrell's conviction, his belief that any new counsel might be confronted with problems similar to The Legal Aid Society's, and his view that Birrell's complaints against the Society were fictitious and the suit frivolous. The trial judge is in a far better position that an appellate court to appraise the reality of Birrell's protestations

---

3. In view of Birrell's independent application his motion to intervene in the Society's petition for mandamus is denied.

against the Society and their effect on counsel whose skin must already have become rather tough. He is also better able to predict whether his sound observations on the responsibilities of a client not to invade counsel's sphere—responsibilities that rest equally on a client who is himself a lawyer even though he may find it harder to observe them—will have the salutary effect they should or whether the defendant will persist in conduct toward The Legal Aid Society that will demand its relief and allow—or require —him to proceed on his own behalf.

■ Birrell's request for the assignment of counsel in his appeal from the order on reargument denying bail presents a different problem.[4] The Legal Aid Society has not been assigned as counsel on that appeal, and while we could assign the Society under the Criminal Justice Act, we prefer not to augment its problems if another more acceptable course is available. At the argument Birrell and the Society were in accord that the attorney best qualified to represent him on the appeal is Charles N. Brower, Esq., who was his counsel at the trial. Although reluctant to add even this limited assignment to the burdens already imposed on Mr. Brower and his firm, White & Case, we thought it best under the circumstances to make this request of them. Lowell Wadmond, Esq., a senior partner of the firm, and Mr. Brower immediately responded in the best traditions of the bar. Birrell's application for the assignment of counsel on his appeal from the order of remand will therefore be granted and an appropriate order will be entered assigning Mr. Brower under the Criminal Justice Act.

The petitions for mandamus as to the order declining to relieve The Legal Aid Society as counsel in the district court

are denied; the motion for the assignment of counsel in this court on the appeal from the order revoking bail is granted.

4. In denying a motion by Birrell addressed to the remand order of December 28, 1967, the writer and Judge Feinberg joined in a memorandum expressing the view that although, in light of the final sentence of 18 U.S.C. § 3148, such an order after conviction was not appealable under 18 U.S.C. § 3147, the proviso to the last sentence of § 3148 preserved appealability under the rule of Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), which was assumed to include persons convicted and awaiting sentence.