**John N. MITCHELL et al., Petitioners,**

**v.**

**Honorable John J. SIRICA, Judge, United States District Court for the District of Columbia, Respondent.**

**No. 74–1492.**

United States Court of Appeals, District of Columbia Circuit.

June 7, 1974.

Dissenting Opinion July 9, 1974.

Certiorari Denied July 25, 1974.

See 94 S.Ct. 3232.

MacKinnon, Circuit Judge, filed a dissenting opinion.

See also, D.C. 377 F.Supp. 1312.

---

Plato Cacheris, Washington, D. C., for John N. Mitchell.

Edmund D. Campbell, Washington, D. C., for Kenneth Wells Parkinson.

John M. Bray, Washington, D. C., for Gordon Strachan.

Sidney Dickstein, James vanR. Springer, Washington, D. C., for Charles W. Colson.

Leon Jaworski, Sp. Prosecutor, Philip A. Lacovara, Counsel to Sp. Prosecutor, James F. Neal, Sp. Asst. to Sp. Prosecutor, and Sidney M. Glazer, Asst. Sp. Prosecutor, Washington, D. C., on response of United States.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, LEVENTHAL, ROBINSON and MacKINNON, Circuit Judges.

## ORDER

PER CURIAM.

On consideration of petitioners' petition for writ of mandamus or prohibition, and of the pleadings filed with respect thereto, it is

Ordered by the Court *en banc* that the aforesaid petition for writ of mandamus or prohibition is denied.

The Judges reserve the right to file opinions at a later date.

MacKINNON, Circuit Judge:

I object to the foregoing order denying the petition in this *en banc* case without opinion and without allowing petitioners to argue the matter orally to this court. The five judges who join in the foregoing order completely deny petitioners a hearing in this court and then by a mere order without any written opinion, in effect deny petitioners their most fundamental rights.

The issues raised by petitioners are substantial. They were deprived of their right in the trial court to develop evidence to support their allegations that the trial judge had acted in an accusatory manner, and it appears admitted on this record that the trial judge has prejudged their ability to obtain a fair trial in this district. The refusal of the majority even to answer these allegations operates, in effect, to ignore the evidence both of prejudgment and of the contacts between the trial judge and the prosecutors. The petitioners are entitled to have this evidence produced, cf. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and they are entitled to have their case tried by a judge who has not stated in effect that he has prejudged a material issue.

I would remand to afford petitioners an evidentiary hearing but if I were required to act on the existing record I would grant the writ. I will file a written opinion as soon as possible.

MacKINNON, Circuit Judge (dissenting):

This criminal case has been called one of the most important cases in American judicial history. At this time [1] it involves an indictment against a former Attorney General of the United States, a former Assistant Attorney General, four former presidential advisers and one lawyer for alleged unlawful conspiracy arising out of the so-called Watergate affair. Other offenses charged against some but not all defendants include obstruction of justice, perjury, false declarations and false statements to agents of the Federal Bureau of Investigation.

Four of the defendants (hereinafter petitioners) [2] petition this court for a

---

1. *See* note 2 *infra*.

2. Actually there are three petitions, one by Mitchell, Ehrlichman and Colson, one by Parkinson and one by Strachan. Defendant Colson recently entered a guilty plea to a separate charge under a stated agreement on the part of the Government to dismiss the charges in the instant indictment against him at the time of sentence. We thus do not consider the motion insofar as Colson is concerned. Defendants Haldeman and Mardian are not parties to the petition.

writ of mandamus or prohibition directing United States District Judge John J. Sirica to proceed no further and to disqualify himself as presiding judge in United States v. Mitchell, (D.D.C., indictment filed March 1, 1974), the alleged "Watergate cover-up" case. The petition is brought under the All Writs Statute, 28 U.S.C. § 1651, and Fed.R.App.P. 21 to review the denial by Judge Sirica of petitioners' disqualification motion, premised upon 28 U.S.C. §§ 144 [3] and 455,[4] the fifth and sixth amendment rights to a fair trial and the Code of Judicial Conduct.[5] United States v. Mitchell, 377 F.Supp. 1312 (D.C.D.C.1974).

This court handled the petition as an *en banc* case. Under the Federal Rules of Appellate Procedure *en banc* hearings are

not favored and ordinarily will not be ordered except (1) when consideration by the full court is necessary to secure or maintain uniformity of its decisions, or (2) *when the proceeding involves a question of exceptional importance.*

Fed.R.App.P. 35(a) (emphasis added). The exceptional importance of the case presumably was the basis for *en banc* consideration. Notwithstanding the recognized importance of this case, a majority of this court deprived petitioners of their right to oral argument, never provided the prior notice required by local Rule 11 [6] and disposed of the matter by a mere one-sentence order denying the petition.[7] Such disposition is improper where the case admittedly is of "exceptional importance." These circumstances compel me to raise my single

3. 28 U.S.C. § 144 provides:
    Bias or prejudice of judge.
    Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
    The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

4. 28 U.S.C. § 455 provides:
    Interests of justice or judge.
    Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.

5. A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
    *    *    *    *    *
(c) he knows. that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
    American Bar Association Special Committee on Standards of Judicial Conduct, Code of Judicial Conduct, Canon 3(C)(1) (1972).

6. U. S. Court of Appeals for the District of Columbia Circuit Rule 11(e) provides:
    (e) Whenever the court, *sua sponte* or on suggestion of a party, concludes that a case is of such a character as not to justify oral argument, it may, after causing notice to be given by the Clerk to the parties of that determination, proceed to dispose of the case without such argument. Motions for restoration to the argument calendar will not ordinarily be entertained by the court.
    As amended June 22, 1970; Feb. 26, 1973.

7. The per curiam order and my one page dissent stating the condensed substance of this opinion and that this opinion would be forthcoming as soon as possible are reproduced at p. 376 supra. The five judges stated they "reserved the right to file opinions at a later date."

and obviously futile objection to the irresponsible and peremptory manner in which this petition was denied. I simply cannot agree that the majority's handling of this petition was an appropriate method to administer justice in this most important of criminal cases.

More substantively, I dissent also because I believe that under the law petitioners are entitled to relief. Petitioners' contentions are divisible into four general categories. They maintain that Judge Sirica must disqualify himself in this case in view of (a) his involvement in the prosecutorial investigation and his prior exposure to evidence, (b) his prejudgment of a material issue, (c) his alleged personal interest in the outcome, and (d) his representation in other cases by some counsel in this case. Petitioners also requested the district court (1) to grant them an evidentiary hearing to develop information concerning Judge Sirica's private meetings with the prosecutors and his submission to the prosecution of a list of witnesses to be called before the grand jury, and (2) to refer the disqualification question to the Calendar Committee of the district court as an appropriate disinterested panel.

The Special Prosecutor agreed in his brief that "it might be reasonable under all the circumstances" to refer the matter to the Calendar Committee of the district court. As amicus curiae, the American Civil Liberties Union has also urged both Judge Sirica and this court to grant petitioners the evidentiary hearing they request.

Nevertheless, on April 30, 1974, Judge Sirica entered an opinion and order in which he refused to disqualify himself, to conduct an evidentiary hearing or to refer the matter to a disinterested panel.[8] The opinion relied strongly on the claim that all the instances cited by petitioners in support of their motion, including the judge's prior involvement in the prosecutors' investigation of this case, arose in the course of official judicial activity. The opinion stated that all counsel would have access to the transcript of the meeting with the prosecutors where the judge urged further grand jury inquiry of certain persons, including one defendant here. Although he admitted having additional *ex parte* contacts with Special Prosecution Force personnel, Judge Sirica refused petitioners' request for an evidentiary hearing because he independently concluded that nothing relevant to this case occurred at those meetings. In regard to his televised statement that these defendants could receive as fair a trial in the District of Columbia as anywhere else in the United States, Judge Sirica denied that this statement reflected any bias or prejudgment of a material issue.

I.

Recusal of a federal judge may be either voluntary, where a judge himself believes the fair administration of justice would be furthered by recusal and does so on his own motion, or mandatory, where required by statute. A classic statement on voluntary recusal was made by Justice Frankfurter in Public Utilities Comm. v. Pollak, 343 U.S. 451, 466–467, 72 S.Ct. 813, 822–823, 96 L.Ed. 1068 (1952) (emphasis added):

> But it is also true that reason cannot control the subconscious influence of feelings of which it is unaware. When there is ground for believing that such unconscious feelings may operate in the ultimate judgment, or may not unfairly lead others to believe they are operating, judges recuse themselves. They do not sit in judgment. They do this for a variety of reasons. *The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact.*

Mandatory disqualification of a federal judge to preside over a particular case may be premised on either of two statutes, 28 U.S.C. §§ 144, 455 (1970).[9]

8. United States v. Mitchell, 377 F.Supp. 1312 (D.D.C., 1974).

9. *See* notes 3–4 *supra.*

Under Section 144, whenever a party to a proceeding files

> a timely and sufficient affidavit that the judge . . . has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein . . . .

The facts alleged in the affidavit must be taken as true, the only question being whether they are legally sufficient to establish personal bias or prejudice.[10] Berger v. United States, 255 U.S. 22, 35–36, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Tynan v. United States, 126 U.S.App.D.C. 206, 209, 376 F.2d 761, 764, cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967). The facts alleged must be material and stated with particularity. United States v. Thompson, 483 F.2d 527, 528 (3d Cir. 1973); cf. Berger v. United States, *supra*. We have held that if the facts well pleaded satisfy the statutory standard, the judge must recuse himself even if he knows them to be false. Tynan v. United States, *supra*, 126 U.S.App.D.C. at 209, 376 F.2d at 764.

Section 144 requires that the bias or prejudice for or against a party be "personal" in nature. This does not mean that the judge must be shown to have a venal antipathy against the individual but merely that the alleged bias or prejudice must be shown to apply in some way to the case of the individual. Here the district court mistakenly assumed that personal bias cannot be established when such bias arises during the course of judicial proceedings. The cases do differentiate between "judicial" and "personal" bias, but sound analysis demonstrates that rigid adherence to such labels, without regard for particular circumstances, may result in a failure of justice in individual cases

It is true, of course, that during a trial a judge inevitably will assess the credibility of witnesses, react to the evidence presented and ultimately determine in his own mind the guilt or innocence of the defendants. In Tynan v. United States, *supra*, heavily relied on by the district court, we remanded the record to the trial judge to augment the record on a speedy trial claim. Defendants then sought the judge's disqualification for personal bias premised on actions taken or statements made earlier during the same trial. We were concerned that disqualifying judges for bias developed *during the very trial* in which disqualification is sought would cripple the courts, and refused to disqualify the judge. Plainly, if such bias were sufficient, virtually every judge in every case would be disqualified and the courts abruptly would cease functioning. But even this rule has both logical and practical limits. As this court stated in Whitaker v. McLean, 73 App.D.C. 259, 118 F.2d 596 (1941), reversing because of bias developed *during* the trial, "[i]f, before a case is over, a judge's bias appears to have become overpowering, we think it disqualifies him."

However, as the district court correctly noted, a judge who presided at the original trial of a defendant is not necessarily disqualified from trying the retrial (citing Hanger v. United States, 398 F.2d 91 (8th Cir. 1968)), nor is it necessarily "improper for the same judge to sit at the trials of co-conspirators tried separately. United States v. DiLorenzo, 429 F.2d 216, 220–221 (2d Cir. 1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971)." 377 F.Supp. at 1317. The decisions, of course, are not unanimous, since each depends upon the particular facts involved and the nature and degree of the bias established. For example, in United States v. Womack, 454 F.2d 1337 (5th Cir. 1972), the appellant was tried separately by the same judge who presided over the trial of appellant's co-conspirators. During the trial of the co-

---

10. Since the facts alleged in the affidavit are taken as established, the "clearly erroneous" standard is inapplicable; determination of the legal sufficiency of the affidavit is a pure question of law.

conspirators the judge characterized the appellant as a "shady character" and told the jury that if one of the co-conspirators was guilty " 'there is no question but that [appellant] . . . would be as culpable.' " *Id.* at 1341. Although this prejudgment of appellant's guilt arose from a judicial proceeding, the court held that it satisfied the "personal bias" standard of Section 144 and reversed the conviction.

And in Knapp v. Kinsey, 232 F.2d 458, 465 (6th Cir.), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956), reversing a lower court because of bias appearing during the trial, the court recognized the "close analogy" between bias developed during trial, which requires reversal, and bias evident prior to trial, which requires disqualification under Section 144. The critical formulation of bias sufficient to reverse was forcefully expressed by the court:

> Whether unconsciously or otherwise, [the trial judge] failed from the start of the trial to view this case with the impartiality between litigants that the defendants were entitled to receive. *His active participation in the case and in the questioning of witnesses exceeded what was reasonably necessary to obtain a clear understanding of what their testimony was and fully justifies appellants' complaint that at times "he, figuratively speaking, stepped down from the bench to assume the role of advocate for the plaintiff."* Although appellees' counsel did not ask or need such assistance, and apparently at times realized the possible prejudice to their cause, the prejudicial effect to appellants' rights requires a reversal of the judgment.

*Id.* at 467 (emphasis added). Where such advocatory bias "exist[s] before the trial it furnishes the basis for disqualification of the judge to conduct the trial. Section 144, Title 28, U.S. Code."

*Id.* at 465. Especially from a due process perspective,[11] it seems clear that the "judicial proceeding" rule can extend no further than is necessary to preserve the functional ability of the courts to try cases.

The district court, moreover, fundamentally misconceived the reach of the cases in this circuit which he relied on for the proposition that development of bias in a judicial proceeding absolutely immunizes him from disqualification under Section 144 in a subsequent case. This broad proposition derives from the statement in United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966), which involved a claim of bias resulting from facts learned by the judge in pretrial proceedings.[12] In this context, the Court stated that "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." However, as petitioners argue:

> Neither *Grinnell* nor any decision by this Court has stretched the principle to sanction preconceptions developed pro or con a particular party from judicial participation *in a prior, separate case* where that party was not present and therefore had no opportunity to controvert or explain the information to which the judge was exposed. . . . Here, . . . all of the allegations relate to occurrences and comments preceding the present indictments and *in proceedings not including these defendants.*

Petition at 13–14 (emphasis added). It is, then, the *ex parte* obtaining of evidence in previous proceedings, where the present defendants had no opportunity to challenge, rebut, qualify or explain such evidence, that is potentially significant.

---

11. *See* text at 382–383 *infra.*

12. In *Grinnell*, the trial judge referred the question of his disqualification to the Chief Judge of the Court of Appeals.

The Supreme Court recently spoke to just such dangers in Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969). *Gregg* involved Federal Rule of Criminal Procedure 32, which provides that a presentence report "shall not be submitted to the court . . . unless the defendant has pleaded guilty or has been found guilty." In unmistakably strong terms, the Court stated that because of their nature and the *ex parte* manner in which the trial court receives such reports, their submission to the court prior to conviction is "error of the clearest kind":

> [I]t is equally clear that the report must not, under any circumstances, be "submitted to the court" before the defendant pleads guilty or is convicted. Submission of the report to the court before that point constitutes error of the clearest kind.
>
> Moreover, the rule must not be taken lightly. Presentence reports are documents which the rule does not make available to the defendant as a matter of right. There are no formal limitations on their contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged. *To permit the ex parte introduction of this sort of material to the judge who will pronounce the defendant's guilt or innocence or who will preside over a jury trial would seriously contravene the rule's purpose of preventing possible prejudice* from premature submission of the presentence report.

*Id.* at 491–492, 89 S.Ct. at 1136 (emphasis added). *Gregg* thus recognized that even the "possible prejudice" resulting from evidence received *ex parte*, albeit in the same judicial proceeding, could mandate reversal.[13] A trial judge, placed

in the vortex of the so-called Watergate affair and being the gravitational center to which much of Watergate irresistably has been drawn, necessarily has received a large quantum of evidence relating to the defendants in this case without any opportunity on their part to present their story prior to the trial court's formation of an opinion on their culpability. *Gregg*, persuasively analogous in this context, demonstrates the great weakness of a blinding and unyielding adherence to the broadly conceived "judicial proceeding" rationale. See generally *United States v. Small*, 472 F.2d 818, 820–822 (3d Cir. 1972) (suggesting that the broad rule of nondisqualification in a retrial by the same judge requires a searching reappraisal in light of *Gregg*).

The district court also misconstrued the decisional law of this circuit on the standard to be applied in the determination of bias. The trial court employed a "bias in fact" test, which would require a showing that a judge is *actually* biased before disqualification is mandated. In *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), construing Section 21 of the Judicial Code, the Supreme Court focused on the term "belief" in the disqualification statute. The Court stated that if the facts alleged in the affidavit could reasonably cause the affiant to entertain a *belief* that a judge was not impartial, disqualification was required:

> The belief of a party the section makes of concern, and if opinion be nearer to or farther from persuasion than belief, both are of influence, and universally regarded as of influence, in the affairs of men, and determinative of their conduct . . . .

We are of opinion, therefore, that an affidavit upon information and be-

---

13. Subsequent to the *Gregg* decision, the Supreme Court adopted an amendment to Rule 32, which now provides for a waiver of the strict requirement of noninspection by the court prior to conviction or entry of a guilty plea ("a judge may, with the written consent of the defendant, inspect a presentence report at any time"), and, with the exception of certain types of information contained in the report, it is available to the defendant for his inspection as a matter of right. This new rule will take effect on August 1, 1974. 42 U.S.L.W. 4551 (U.S. April 23, 1974).

lief satisfies the section, and that, upon its filing, if it show the objectionable inclination or disposition of the judge, . . . it is his duty to "proceed no further" in the case.

*Id.* at 34–35, 41 S.Ct. at 233. This court, relying on *Berger,* has held that the policy underlying Section 21, the precursor statute to Section 144,

> is that the courts of the United States "shall not only be impartial in the controversies submitted to them but shall give assurance that they are impartial"; i. e., *shall appear to be impartial.*

Whitaker v. McLean, 73 App.D.C. 259, 118 F.2d 596 (1941) (emphasis added). The district court's attempt to distinguish *Whitaker* is not persuasive. *Whitaker* did not "suggest the need for each judge to follow his own conscience" nor does it "rest on [significantly] distinguishing factors." 377 F.Supp. at at 1325 n. 11. Rather, in *Whitaker* we plainly adopted the *appearance of bias* test,[14] premising our decision on the due process right to a fair trial by an impartial judge.

With regard to this due process right, the Supreme Court has said that "justice must satisfy the appearance of justice." Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954).[15] The Court, moreover, appears to have raised the appearance of bias test to the constitutional level, at least in cases involving a pecuniary interest, however small, on the part of a judge:

> For in *Tumey* [v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)] the Court held that a decision should be set aside where there is "the slightest pecuniary interest" on the part of the judge and specifically rejected the . . . contention that

the compensation involved there was "so small that it is not to be regarded as likely to influence improperly a judicial officer in the discharge of his duty . . . ." [I]n the case of courts this is a *constitutional* principle

· · · ·

Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 148, 89 S.Ct. 337, 339, 21 L.Ed.2d 301 (1968) (emphasis in original). And later in the opinion the Court, referring to the Canon of Judicial Ethics on social relations of judges, stated that "any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the *appearance of bias*." *Id.* at 150, 89 S.Ct. at 340.

This circuit also has adopted the *appearance of bias* test, with specific reference to the prejudgment of issues in administrative agency disqualification cases. In Cinderella Career and Finishing Schools, Inc. v. FTC, 138 U.S.App. D.C. 152, 160, 425 F.2d 583, 591 (1970), we remarked that administrative hearings "must be attended, not only with every element of fairness but with the very appearance of complete fairness." To the same effect is our decision in Texaco, Inc. v. FTC, 118 U.S.App.D.C. 366, 372, 336 F.2d 754, 760 (1964), vacated and remanded on other grounds, 381 U.S. 739, 85 S.Ct. 1798, 14 L.Ed.2d 714 (1965). We also have placed the appearance of bias test on a constitutional level, for "the very appearance of complete fairness [is required]. Only thus can the tribunal conducting . . . [the] proceeding meet the basic requirement of due process." Amos Treat & Co. v. SEC, 113 U.S.App.D.C. 100, 107, 306 F.2d 260, 267 (1962).

In disqualification cases, the courts can demand no less of themselves than they do of administrative agencies. Cf.

---

14. Commentators have argued persuasively for the appearance of bias test, even though the majority of courts rely on the bias in fact test. *See, e. g.,* Note, Disqualification of a Federal District Judge for Bias—The Standard Under Section 144, 57 Minn.L.Rev. 749 (1973) ; Note, Disqualification of Judges

for Bias in the Federal Courts, 79 Harv.L. Rev. 1435 (1966).

15. The Supreme Court remanded the case for retrial of a contempt charge before a different judge than the judge before whom the alleged contempt occurred. 348 U.S. at 18, 75 S.Ct. 11.

Commonwealth Coatings Corp. v. Continental Casualty Co., *supra*, 393 U.S. at 150, 89 S.Ct. at 340. It may be true that

> [s]uch a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between the contending parties. But to perform its high function in the best way "justice must satisfy the *appearance of justice.*"

In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (emphasis added).[16]

## II.

Viewed in the light of these general principles, the particular allegations in this case entitle petitioners to relief. Petitioners maintain that Judge Sirica must disqualify himself because of (a) his involvement in the prosecutor's investigation that resulted in the indictment of these defendants and his prior exposure to some of the evidence; (b) his prejudgment of material issues in the case; (c) his personal interest in the outcome arising from his public posture as the man who "broke open" the Watergate case; and (d) his past and continuing representation by counsel who represent parties in this case.

At the outset I reject the allegations included in categories (c) and (d) as being legally insufficient grounds for mandatory disqualification. Judge Sirica is an experienced trial judge of exceptional competence. From our review of his cases over the years, I am confident that neither his role in this case, inevitably publicized, nor the representation of his legal positions by the Special Prosecutor would influence in any way

his conduct of a trial. Therefore, allegations (c) and (d) present no need for further discussion.

However, allegations (a) and (b)— Judge Sirica's alleged involvement in the prosecutor's investigation of this case and his prejudgment of material issues —present very serious questions. With respect to these allegations, the detailed facts alleged in the affidavits are far from frivolous and cannot lightly be dismissed.

Petitioners' affidavits include the following specific allegations to demonstrate a merger of prosecutorial and judicial functions. The alleged facts must be assumed true for the purpose of testing the sufficiency of the affidavits. Berger v. United States, 255 U.S. 22, 35–36, 41 S.Ct. 230, 65 L.Ed. 481 (1921).

1. Judge Sirica repeatedly and consistently interrogated defendants and witnesses in the Watergate break-in trial "with the zeal of a prosecutor." App. B at 2. This interrogation was "an effort to investigate matters *beyond the guilt or innocence of the defendants before him.*"

App. B at 7 (emphasis added).

2. [During the Watergate break-in trial and afterwards,] Judge Sirica expressed the belief that criminal responsibility extended beyond the convicted defendants to *higher officials* in the Committee to Reelect the President and in the White House. * * * He has expressed the belief that higher officials were involved in the Watergate matter.

App. B at 3.

3. [Judge Sirica commented] to defendant Liddy suggesting that he

---

16. In addition to pure legal theory, there are several pragmatic advantages to the appearance of bias test. First, a defendant, and the public generally, not only legitimately expects but deserves a judicial process untainted by even the appearance of bias; continued confidence in the judiciary in large measure rests upon the fulfillment of that expectation. Second, it is virtually impossi-

ble and certainly impractical in many instances to determine the actuality of bias, for external and objective manifestations are not always a true guide to a subjective state of mind. Finally, disqualification of a judge premised on the appearance of bias does not stigmatize him as would disqualification for actual bias.

was low on the totem pole to be sentenced to thirty years while those who *planned, organized and directed* the operation walked the streets free.

App. D at 4.

4. In an admitted effort to coerce testimony from the defendants in the Grand Jury and before the Senate investigating committee which would implicate higher officials, Judge Sirica imposed conditional maximum sentences.[17]

App. B at 10.

5. . . . Judge Sirica took the extraordinary step of drawing up a list of six Administration officials whom he felt the prosecutors ought to put under oath in the Grand Jury room. Affiants lack specific knowledge of the names included in that list since Judge Sirica ordered it held under seal, but it is reasonable to assume that the names of one or more of the defendants in this case appear on the list. [The transcript of this chambers conference has since been made available to counsel. Nine names were suggested for further grand jury inquiry. One defendant's name appears on the list, as well as the names of three other persons who were charged and convicted in related cases.]

App. B at 10.

6. According to newspaper reports dated June 19, 1973 and July 18, 1973, Judge Sirica met privately on at least two occasions with members of the Watergate Special Prosecution Force. The details of these and any other unreported private meetings have not been made public; affiants are therefore unable to state with particularity the number of such meetings which have taken place, or the dates, participants, purposes, or substance thereof.

---

17. This use of extremely harsh sentences running as much as 35 years, and the threat that such sentences might be finally imposed if the defendants did not disclose everything they knew about related offenses and those involved therein, has been criticized by a few. England at one time prohibited the duress of prisoners by jailing or sentence to accuse others:

> *Duress of prisoner.*—To prevent abuses by the extensive power which the law is obliged to repose in gaolers, it is enacted by statute 14 Edw. III, c. 10, that if any *gaoler* by too great duress of imprisonment makes any prisoner, that he hath in ward, become an *approver* or an *appellor* against his will; that is, as we shall see hereafter, to accuse and turn evidence against some other person; it is felony in the gaoler. For, as Sir Edward Coke observes, (a) it is not lawful to induce or excite any man even to a just accusation of another; much less to do it by duress of imprisonment; and least of all by a gaoler, to whom the prisoner is committed for safe custody.

II W. Blackstone, Commentaries on the Laws of England 1305 (4th ed. T. Cooley & J. Andrews 1899) (emphasis in original).

In imposing the instant sentences two cases were cited. United States v. Sweig, 454 F.2d 181 (2d Cir. 1972), held that a judge who tells a defendant at sentencing that he might mitigate the sentence (30 months and a fine of $2,000) if he elects "to speak more fully" is not a violation of his fifth amendment right against self-incrimination. And in United States v. Vermeulen, 436 F.2d 72 (2d Cir. 1970), it was held not improper where the judge stated at the time of sentencing on two counts to five years consecutive imprisonment "that future cooperation could have a favorable impact before *the federal parole board.*" 436 F.2d at 77 (emphasis added).

The sentences here ran from 35 to 40 years. Moreover, 18 U.S.C. § 4208(b), which the court relied upon in imposing such sentences, was intended to aid the court in determining a proper sentence and not to aid the prosecutor through duress of the prisoner, in obtaining evidence of other offenses. There is nothing in either the language of the statute or its legislative history that indicates it was intended to be used to compel testimony.

The *Sweig* and *Vermeulen* decisions were instances where a lighter sentence than the offense justified was held out as inducement to the prisoner if he testified. There is nothing improper in this. But this does not justify the imposition of a harsher sentence than the offense calls for, or the threat of such a sentence, because the prisoner refuses to disclose information the judge thinks he should.

App. B at 12–13.

Petitioners do not contend that any of these occurrences were improper in the context in which they occurred. The question of Judge Sirica's disqualification in the present case does not depend on a finding of legal error in his conduct of the Watergate break-in trial. The issue here is whether the allegations of the affidavit with respect to his conduct in that case demonstrate a frame of mind that is sufficiently accusatory of *these* petitioners to indicate that they could not receive a fair trial in the present case. No man may accuse and also sit in judgment. Thus, even though Judge Sirica's actions may have been perfectly justifiable in the context of the Watergate break-in case, his conduct there must be considered here to determine whether it demonstrates possible bias or prejudice against the defendants in the instant indictment.

The affidavits allege that during and after the Watergate break-in trial and sentencing proceedings, Judge Sirica "expressed the belief that criminal responsibility extended beyond the convicted defendants to *higher officials* in the Committee to Re-elect the President and in the White House" who had *"planned, organized and directed* the [Watergate] operation." App. B at 3; App. D at 4 (emphasis added). Through the evidence adduced at trial Judge Sirica apparently came to believe that an attempted cover-up existed. Consequently, the affidavits allege, both at trial and during sentencing he continually pressed the defendants and witnesses to reveal the higher officials who directed the clandestine organization. The defendants in the present case are among the narrow and identifiable class of such higher officials who were in effect accused in the above quoted allegations and who are now charged with unlawful-

ly conspiring to obstruct the investigation into the break-in.

At times Judge Sirica assumed an even more active role in the prosecutors' investigation of this case. At a chambers conference on January 24, 1973, at which the prosecutors and three attorneys representing defendants in the break-in trial were present, Judge Sirica suggested to the prosecutors that they call nine named individuals before the grand jury. Although he disclaimed any accusatory intent, one of those individuals was indicted by the grand jury and is now a defendant in this case, and three others were subsequently charged and convicted in related cases. Judge Sirica's alleged actions in repeatedly interrogating witnesses concerning the involvement of others, in using the sentencing process to coerce testimony implicating higher officials, and in suggesting further grand jury inquiry of named individuals including a defendant here, publicly demonstrated an accusatory frame of mind that connected the present defendants to the crime with which they are now charged—obstructing the prosecution of the Watergate break-in.[18]

Also troublesome is the existence of further *ex parte* contacts between Judge Sirica and the prosecutors, the details of which are unavailable to petitioners or to this court. Petitioners rely on newspaper accounts of at least two private meetings between Judge Sirica and the prosecutors. The opinion denying the motions for disqualification admits meetings with Special Prosecution Force personnel but asserts, "These proceedings included no discussion of evidence bearing on the guilt or innocence of any defendant in this case nor any discussion even remotely of the kind." 377 F. Supp. at 1316. The opinion suggests that these meetings "were necessitated by the Court's duties relating to grand

---

18. Although Judge Sirica's action in suggesting further grand jury investigation was entirely proper and commendable in the context of the earlier trial, his involvement in the prosecutors' investigation may have rendered it inappropriate for him to preside at the trial which resulted from that investigation. *See* In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

juries," *id.* at 1323, but discloses neither the purpose of such meetings nor the subjects which were discussed.

In view of their allegations, petitioners are entitled to develop the facts surrounding the *ex parte* meetings with the prosecutors. A judge, having assisted in the bringing of an indictment, may not consistent with due process of law preside at the trial of that indictment, see In re Murchison, 349 U.S. 133, 75 S. Ct. 623, 99 L.Ed. 942 (1955), and such judicial involvement in the prosecutorial process is sufficient to require disqualification under Section 144. The facts alleged by petitioners in this regard may already constitute the requisite "fair support" for a reasonable apprehension of disqualifying bias or prejudice. See Berger v. United States, 255 U.S. 22, 33–34, 41 S.Ct. 230, 65 L.Ed. 481 (1921). The denial of petitioners' request for an evidentiary hearing deprived petitioners of the opportunity to demonstrate fully the degree to which the judicial and prosecutorial functions may have coalesced in this case into accusation. An evidentiary hearing concerning the number and nature of contacts between the prosecutors and the judge could be conducted without undue delay and would provide some assurance against reversal after trial on the grounds of bias or prejudice.

The need for an evidentiary hearing is further highlighted by a conversation appearing in the Presidential Tape Transcripts which were released subsequent to filing of the petitioners' affidavits. Submission of Recorded Presidential Conversations to the Committee on the Judiciary of the House of Representatives by President Richard Nixon (April 30, 1974). The transcripts reveal the following statements by Mr. Henry Petersen, the Assistant Attorney General in charge of the Criminal Division of the Department of Justice, in a conversation with the President on April 16, 1973 (1:39–3:25 P.M.):

So they, after they concluded all their questions and names and what have

you, they went back and as just a flyer, Judge Sirica when he—in connection with the subpoena issue—hears part of the tapes and hears is Chotiner's name [*sic*]. He says to Silbert [Assistant United States Attorney conducting the Watergate investigation], *I want these people subpoenaed* and that's Murray Chotiner and others. And Silbert says, well he's been to the Grand Jury and this name has nothing to do with it. *He [Sirica] has been calling about it ever since—subpoena.*

＊   ＊   ＊   ＊   ＊   ＊

No sir. And he—we have no evidence against him.

＊   ＊   ＊   ＊   ＊   ＊

It's become a matter of principle with us. We will not subpoena him. We have no reason to subpoena him.

＊   ＊   ＊   ＊   ＊   ＊

And Sirica wants us to subpoena him just I think for the hell of it.

*Id.* at 913–14 (emphasis added). These allegations suggest repeated *ex parte* contacts and affirmative investigative conduct by Judge Sirica. The facts developed at an evidentiary hearing may or may not support these allegations and their natural inference of bias in favor of the prosecution, but it is only fair, in order to satisfy not only the fact but the appearance of justice, that petitioners have an opportunity to explore these allegations at an evidentiary hearing.

### III.

Petitioners' affidavits further allege that televised public comments by Judge Sirica indicate his prejudgment of the issue whether these defendants can receive a fair trial in the District of Columbia. The incident, as described by Judge Sirica, occurred as follows:

Transcripts of the questions and answers, later televised, show that in response to the question "Is there any doubt in your mind about these men's [defendants at bar] abilities to get fair trials?" the Court stated, *"I think they can get just as fair a trial*

*in the District of Columbia as any federal court in the United States. I have no doubt about that. Thank you.*" When the subject was raised again, the Court responded, "Well, in my opinion, any defendant, any person who happens to be a defendant in this jurisdiction, in my opinion he can get just as fair a trial here as any jurisdiction in the country."

377 F.Supp. at 1324 (emphasis added).

Judge Sirica maintains that, "fairly interpreted," his statements were merely addressed to "the quality of the federal judiciary in the District of Columbia" and did not concern changes of venue. However, this interpretation seems too narrow. Certainly the reporter was not asking Judge Sirica about the quality of the trial Judges in the District of Columbia. Considering the phrasing of the question to which Judge Sirica responded, an equally fair interpretation is that his comments reflected a prejudgment on the material issue of the ability of petitioners to receive a fair trial in this district. At a minimum, the statement certainly created an *appearance* of prejudgment, and in this circuit it is the appearance of justice which is crucial. See text *supra* at 381–383.

Prejudgment of a material issue constitutes disqualifying prejudice under Section 144. See, e. g., Peacock Records, Inc. v. Checker Records, Inc., 430 F.2d 85, 89 (7th Cir. 1970), cert denied, 401 U.S. 975, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1971); Knapp v. Kinsey, 232 F.2d 458, 461, 462 (6th Cir.), cert. denied, 352 U. S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956). The venue issue may be the most important question in the case. After publicly announcing his views on this issue, it may be difficult for Judge Sirica to change his opinion regardless of what may develop when the parties brief and argue the question. Cf. Cinderella Career & Finishing Schools, Inc. v. FTC, 138 U.S.App.D.C. 152, 159, 425 F.2d 583, 590 (1970). A different trial judge would be unencumbered by the pressure to sustain his prior, publicly

expressed judgment and also would be free to rule against the defendants without the inevitable charges of prejudice. Therefore, at the least, Judge Sirica should recuse himself from ruling on the defendants' motions for change of venue.

## IV.

Finally, I have no doubt that Judge Sirica's refusal to disqualify himself is reviewable by mandamus. The All Writs Statute, 28 U.S.C. § 1651(a) (1970), provides:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

Under this statute we have the power to issue a writ of mandamus in cases, such as the present one, which are subject to our eventual appellate jurisdiction. La Buy v. Howes Leather Co., 352 U.S. 249, 254–255, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 25, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). Issuance of the writ is discretionary, however, and the court's discretion should only be exercised in exceptional cases in the interest of justice. E. g., Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); Roche v. Evaporated Milk Ass'n, *supra*, 319 U.S. at 25–26, 63 S.Ct. 938; Ex parte United States, 287 U.S. 241, 248–249, 53 S.Ct. 129, 77 L.Ed. 283 (1932). The question here is whether this petition is among those "really extraordinary causes" which warrant the use of mandamus. Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947).

The writ traditionally has only been used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or *to compel it to exercise its authority when it is its duty to do so.*" Roche v. Evaporated Milk Ass'n, *supra*, 319 U.S. at 26, 63 S.Ct. at 941 (1943) (emphasis added). Sections 144 and 455 of Title 28, discussed above, confer a

duty upon the trial judge by requiring that he *"shall* disqualify himself" and *"shall* proceed no further" in any case in which he has a substantial interest or a personal bias or prejudice. If an affidavit under Section 144 alleges facts sufficient to require disqualification, then the trial judge has no alternative but to disqualify himself. He has *"no lawful right or power* to preside as judge on the trial of defendants upon the indictment" and has a *"duty* to 'proceed no further' in the case." Berger v. United States, 255 U.S. 22, 36, 35, 41 S.Ct. 230, 234, 233, 65 L.Ed. 481 (1927) (emphasis added). Mandamus is the appropriate remedy to enforce this duty even though the question may also be reviewable on appeal. As long ago as the *Berger* decision, *supra,* the Supreme Court recognized the difficulties inherent in postponing review of a disqualification decision until after the trial has occurred:

> [The statute's] solicitude is that the tribunals of the country shall not only be impartial in the controversies submitted to them, but shall give assurance that they are impartial,—free, to use the words of the section, from any "bias or prejudice" that might disturb the normal course of impartial judgment. And to accomplish this end the section withdraws from the presiding judge a decision upon the truth of the matters alleged. Its explicit declaration is that, upon the making and fil-

ing of the affidavit, the judge against whom it is directed "shall proceed no further therein, but another judge shall be designated in the manner prescribed in * * * section 23 to hear such matter." And the reason is easy to divine. To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed. *The remedy by appeal is inadequate. It comes after the trial, and if prejudice exist, it has worked its evil, and a judgment of it in a reviewing tribunal is precarious. It goes there fortified by presumptions, and nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient.*

*Id.* at 35–36, 41 S.Ct. at 234 (emphasis added).

A clear majority of the circuits recognize that a judge's refusal to disqualify himself is reviewable by mandamus.[19] In many decisions the courts have either granted a writ of mandamus (or prohibition) or, considering a formal writ unnecessary, instructed the trial judge to disqualify himself.[20] In a number of other decisions the courts have recognized that special circumstances may justify the use of mandamus to review a refusal to disqualify, but concluded that petitioner's affidavit was insufficient to require disqualification.[21] Only three

19. 9 J. Moore, Federal Practice ¶ 110.13 [10], at 187–88 (1973) ; *see* Note, Disqualification of Judges and Justices in the Federal Courts, 86 Harv.L.Rev. 736, 738 & n. 13 (1973) ; Comment, Disqualification for Interest of Lower Federal Court Judges, 71 Mich.L.Rev. 538, 547–50 (1973).

20. United States v. Bryan, 393 F.2d 90 (2d Cir. 1968) ; Occidental Petrol. Corp. v. Chandler, 303 F.2d 55 (10th Cir. 1962), cert. denied, 372 U.S. 915, 83 S.Ct. 718, 9 L.Ed.2d 722 (1963) ; United States v. Ritter, 273 F.2d 30 (10th Cir. 1959), cert. denied, 362 U.S. 950, 80 S.Ct. 863, 4 L.Ed.2d 869 (1960) ; Gladstein v. McLaughlin, 230 F.2d 762 (9th Cir. 1955) ; Connelly v. United States District Court, 191 F.2d 692 (9th Cir. 1951) ; In re Honolulu Consol. Oil Co., 243 F. 348 (9th Cir. 1917). *See also* Yablonski v. United Mine Workers, 147 U.S.

App.D.C. 193, 454 F.2d 1036 (1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1609, 31 L. Ed.2d 816 (1972) (mandamus granted to compel disqualification of attorney).

21. Pfizer, Inc. v. Lord, 456 F.2d 532 (8th Cir.), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676 (1972) ; Wolfson v. Palmieri, 396 F.2d 121 (2d Cir. 1968) ; Rosen v. Sugarman, 357 F.2d 794 (2d Cir. 1966) ; In re Union Leader Corp., 292 F.2d 381 (1st Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961) ; Foster v. Medina, 170 F.2d 632 (2d Cir. 1948), cert. denied, 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442 (1949) ; Hurd v. Letts, 80 U.S.App.D.C. 233, 152 F.2d 121 (1945) ; Dilling v. United States, 79 U.S.App.D.C. 47, 142 F.2d 473 (1944) ; Minnesota & Ontario Paper Co. v. Molyneaux, 70 F.2d 545 (8th Cir. 1934) ; Henry v. Speer, 201 F. 869 (5th Cir. 1913).

circuits appear to deny mandamus in all instances of alleged disqualification.[22]

The fundamental right to be tried before an impartial judge is as important as other rights enforceable prior to trial by mandamus. In Dairy Queen v. Wood, 369 U.S. 469, 472, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962), the Supreme Court emphasized "the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury . . . ." See also Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed. 988 (1959). Our own court has utilized mandamus to secure other fundamental rights of criminal defendants. For example, we have held that mandamus prior to trial is the best method to correct defects in preliminary proceedings, even though they are reviewable on appeal after trial.[23] If mandamus is available to secure the right to trial by jury and the right to errorless pretrial proceedings (which does not concern the accused's ultimate guilt or innocence), then the right to be tried before an impartial judge, a right grounded in fundamental due process, certainly warrants protection by the writ of mandamus. See In re Union Leader Corp., 292 F.2d 381, 384 (1st Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L. Ed.2d 190 (1961). As Judge Friendly explained in Legal Aid Society v. Herlands, 399 F.2d 343, 346 (2d Cir. 1968), cert. denied, 393 U.S. 1033, 89 S.Ct. 649, 21 L.Ed.2d 577 (1969):

> Refusal of recusation goes to the constitution of the tribunal which is to conduct the trial, an issue which if not jurisdictional in an "arbitrary and technical" sense, . . . comes exceedingly close to jurisdiction and thus

is within the traditional concept of mandamus.

In Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), the Supreme Court cautioned against overuse of the writ of mandamus and reemphasized that mandamus is not a substitute for appeal in criminal cases. In that case the *Government* sought mandamus to prevent the trial judge from compelling the Government to disclose which of the defendant's oral statements it intended to rely upon. The court of appeals granted the writ but the Supreme Court reversed, reasoning that allowing the Government to challenge adverse rulings by mandamus would interfere with the accused's right to a speedy trial and would circumvent the strong federal policy disfavoring appeals by the Government in criminal cases. *Id.* at 96, 98, 88 S.Ct. 269.

The *Will* decision does not mean that mandamus is unavailable to review any preliminary ruling in a criminal case. See *id.* at 97, 107, 88 S.Ct. 269. As Justice Black pointed out in his concurring opinion in *Will:*

> [I] would like to add a few words, which I do not understand to be in conflict with what the Court says, concerning the writ of mandamus. I agree that mandamus is an extraordinary remedy which should not be used except in extraordinary circumstances. And I also realize that sometimes the granting of mandamus may bring about the review of a case as would an appeal. Yet this does not deprive a court of its power to issue the writ. Where there are extraordinary circumstances, mandamus may be used to review an interlocutory order which is by no means "final" and thus appealable under federal statutes. [T]he is-

22. *See* Action Realty Co. v. Will, 427 F.2d 843 (7th Cir. 1970); Albert v. United States District Court, 283 F.2d 61 (6th Cir. 1960), cert. denied, 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 706 (1961); Green v. Murphy, 259 F.2d 591 (3d Cir. 1958); Korer v. Hoffman. 212 F.2d 211 (7th Cir. 1954). *But see* Rapp v. Van Dusen, 350 F.2d 806 (3d Cir. 1965) (instructed disqualification under the special circumstances presented).

23. Blue v. United States, 119 U.S.App.D.C. 315, 321, 342 F.2d 894, 900 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965); *see* United States v. King, 157 U.S.App.D.C. 179, 482 F.2d 768 (1973); Ross v. Sirica, 127 U.S.App.D.C. 10, 380 F. 2d 557 (1967).

suance of the writ of mandamus is proper where a court finds exceptional circumstances to support such an order.

*Id.* at 107–108, 88 S.Ct. at 280. (Black, J., concurring). See also, Thornton v. Corcoran, 132 U.S.App.D.C. 232, 407 F. 2d 695 (1969); 9 J. Moore, Federal Practice ¶ 110.28, at 309–14 (1973). It should also be noted that subsequent to the *Will* decision the Second Circuit reaffirmed that mandamus is available to review a judge's refusal to disqualify himself. Legal Aid Society v. Herlands, 399 F.2d 343, 346 (2d Cir. 1968), cert. denied, 393 U.S. 1033, 89 S.Ct. 649, 21 L.Ed.2d 577 (1969).

The circumstances in the present case are sufficiently extraordinary to warrant the use of mandamus. Mandamus is sought here to enforce the defendants' due process right to be tried before an impartial judge—a fundamental right essential to a fair trial. Moreover, the court cannot ignore the profound national interest in this trial involving a former Attorney General and several former presidential aides. Cf. Nixon v. Sirica, 159 U.S.App.D.C. 58, 65, 487 F.2d 700, 707 (1973); United States v. United States District Court, 444 F.2d 651, 655 (6th Cir. 1971), aff'd, 407 U.S. 297, 301, n. 3, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). By ordering *en banc* consideration, this court necessarily determined that the petition "involves a question of *exceptional importance.*" Fed.R.App.P. 35(a) (emphasis added). Even the Special Prosecutor acknowledges that mandamus is the appropriate procedure in this case:

We believe that the instant case is one of the rare cases in which [review by extraordinary writ] is warranted. In the court below, we took the position that it would be appropriate for the Calendar Committee of the District Court to decide the question "since the considered judgment of that three judge panel would be given the heaviest weight on appeal from any convictions in this protracted and important case." For like reasons, since this is an exceptionally impor-

tant case of profound national interest and since it is estimated that trial will take several months, we believe that the interests of justice make it appropriate for this Court to exercise its power to decide the recusal issue on the merits at this time.

Response for the United States at 9.

Under these circumstances, postponing a decision on this vital, fair trial issue would amount to a gross maladministration of justice. As Judge Hastie stated in his concurring opinion in Green v. Murphy, 259 F.2d 591, 595 (3d Cir. 1958):

The very special, challenging and often sensational charge of partiality in the administration of justice which is initiated by a formal affidavit of prejudice against a judge should receive final adjudication at first opportunity, if only in the interest of public confidence in the courts. Moreover, a trial is not likely to proceed in a very satisfactory way if an unsettled claim of judicial bias is an ever present source of tension and irritation. Only a final ruling on the matter by a disinterested higher court before trial can dispel this unwholesome aura. Thus, if an appellate court refuses, when properly petitioned, to prevent a disqualified judge from trying a case, or to say that the challenged judge is not disqualified, this postponement of decision hurts the administration of justice, even though the court reserves the right to pass upon the matter after trial. Such considerations far outweigh the objections to piecemeal appeals which ordinarily militate against deciding on mandamus an issue which can be reviewed after trial. Another normal objection to mandamus, its character as a challenge addressed to the judge himself, has no force here because the affidavit of prejudice has already challenged the judge in the most personal way imaginable.

## V.

In conclusion, I dissent from the majority's summary disposition of this important *en banc* case without oral argu-

ment and without opinion. Moreover, I believe that petitioners have made a sufficient showing to require an evidentiary hearing concerning the number and nature of Judge Sirica's *ex parte* contacts with the prosecutors. At the very least, Judge Sirica should recuse himself from ruling on the defendants' motions for change of venue—an issue on which he has conveyed the appearance of prejudgment. Finally, I would strongly suggest that Judge Sirica refer to a disinterested panel the question whether the allegations of the affidavits charging judicial involvement in the prosecutorial process and prejudgment of material issues, which allegations cannot be contested, compel his disqualification. The Special Prosecutor and the American Civil Liberties Union concur in this latter suggestion.

The foregoing opinion should not be construed as a conclusion that Judge Sirica is in fact biased or prejudiced. It is the appearance of justice that concerns me. In a case as momentous as this, the judicial system must maintain an unquestionable appearance of fair, even-handed justice. Petitioners' allegations sufficiently cloud the appearance of justice to require affirmative action by this court.